**ALLEN M. CAMPBELL CO., GENERAL CONTRACTORS, INC., Appellant,**

v.

**VIRGINIA METAL INDUSTRIES, INC., Appellee.**

No. 82–1845.

United States Court of Appeals, Fourth Circuit.

Argued March 8, 1983.

Decided June 3, 1983.

Steele B. Windle, III, Atlanta, Ga. (Aubrey L. Coleman, Smith, Currie & Hancock, Atlanta, Ga., J. Randal Hunter, Beaman, Kellum & Stallings, P.A., New Bern, N.C., on brief), for appellant.

Warren E. Zirkle, Richmond, Va. (Kenneth J. Moran, Thomas S. Schaufelberger, McGuire, Woods & Battle, Richmond, Va., on brief), for appellee.

Before PHILLIPS and MURNAGHAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

MURNAGHAN, Circuit Judge:

In carrying out the functions of a judge, one comes to realize that there are very few cases indeed in which ultimately the facts do not control the outcome. Arguments impeccable in their abstract reliance upon broadly phrased principles of law tend to evaporate when the equities point to a different result. Purely linguistic considerations should not be permitted to outweigh substance.

The plaintiff, Allen M. Campbell Company, in August 1981, intended to bid on a Department of the Navy contract to construct housing for enlisted personnel at Camp LeJeune, North Carolina. The deadline for submission of bids was 2:00 P.M. on August 11, 1981. That last half hour or so before bidding closes can often be a hectic time, and such apparently was the case here. At about 1:30 P.M., the defendant, Virginia Metal Industries, Inc., telephoned Campbell and quoted a price to supply all hollow metal doors and frames required by the plans and specifications.[1] The price promised was $193,121, plus applicable taxes.

Assuming the truth of all well-pleaded allegations of the plaintiff as we must, since the case was disposed of in the district

---

1. The answer filed by Virginia Metal had denied that it had made the alleged quotation of a price to supply all the hollow metal doors and frames required. However, on a Fed.R.Civ.P. 12(b) or (c) motion that denial is not to be taken into account. The facts as pleaded in the complaint are, at that stage, what control, and

court by an award of judgment under Fed. R.Civ.P. 12(b) or (c) to the defendant,[2] we accept that Campbell based the computation of its bid for the Navy project on the quoted price for the hollow metal doors and frames of $193,121 and taxes.

Campbell as the successful bidder was awarded the Navy contract to construct enlisted housing. Virginia Metal was alleged to have backed out of its promise and, as a consequence, Campbell had to obtain the items covered by the quoted price of $193,121 from another supplier, at a cost $45,562 greater than what it had been led to expect Virginia Metal would charge.

Virginia Metal's rejoinder to Campbell's suit for the difference of $45,562 is that there had been no promise by Campbell that, should it prove the successful bidder for the Navy contract, it would purchase doors and frames from Virginia Metal. Absent the consideration that such an undertaking would have provided, the argument runs, there was no contract, Campbell was legally free to shop around and purchase from someone other than Virginia Metal, and hence there existed no obligation on Virginia Metal's part to abide by the promise to sell for $193,121 plus taxes.

As a consequence of the gigantic achievements in the field of contracts law by Samuel Williston and others, we have on rare occasions to confront situations posing some difficulty because they do not fit precisely into the patterned concepts laid down and accumulated by Williston and his followers. Nothing, not even the law of contracts, however, is altogether perfect.

We are not the first court to encounter the situation where there has been a promise unsupported by consideration which has occasioned reliance and change of position so that the promisor who backs away from his undertaking visits a real hardship on the promisee. An absence of consideration in such cases should not permit an unjust result. Rather, the law has developed the concept of promissory estoppel which allows recovery even in the absence of consideration where reliance and change of position to the detriment of the promisee make it unconscionable not to enforce the promise or to award damages for its breach.[3]

As the case was argued to us, a great deal of attention was devoted to whether or not the doctrine of promissory estoppel applies in North Carolina. Both parties proceeded on the assumption that there was no direct authority one way or the other. However, the recent North Carolina case of *Wachovia Bank & Trust Company, N.A. v. Rubish,* 306 N.C. 417, 293 S.E.2d 749 (1982), addressed the question and explicitly held that the law of North Carolina includes, and where appropriate applies, the doctrine of promissory estoppel. At 306 N.C. 427, 293 S.E.2d 755–56, the court stated:

> In order to prove a waiver by estoppel defendant need not prove all elements of an *equitable* estoppel, for which proof of actual misrepresentation is essential; neither need he prove consideration to support the waiver. Rather, he need only prove an express or implied promise ... and defendant's detrimental reliance on that promise.

(Emphasis in original). The court went on to quote with approval language from *Col-*

---

the promise and Campbell's reliance on it were unambiguously pleaded.

**2.** *See Coakley & Williams v. Shatterproof Glass Corp.,* 706 F.2d 456 (4th Cir.1983).

**3.** An obvious example occurs when someone gratuitously makes an undertaking that he will see to the timely payment of another's insurance premium. If he fails to do so, the other person, erroneously yet reasonably believing himself to be insured, may wake up one day to find that fire has gutted his building or that he has suffered some other loss but that no valid policy is in force. As a volunteer, the promisor may well have had nothing whatever to gain in a business sense. In such cases, courts have held that an estoppel arises against the denial of consideration. 1A A. Corbin, *Corbin on Contracts* § 208 at 265 (1963):

> There are cases holding that a gratuitous promise to procure insurance on the plaintiff's property is made enforceable by the plaintiff's forbearance, in reliance on the promise, to procure such insurance himself.

*bath v. H. B. Stebbins Lumber Co.,* 127 Me. 406, 414–15, 144 A. 1, 5 (1929): [4]

"It is stated that to constitute a waiver there must be either a contract supported by consideration or the necessary elements of estoppel. [Citations omitted.] If the 'estoppel' of this alternative means the ordinary equitable estoppel, a necessary element of which is the misstatement of an existing fact, this court has not so held.... A waiver may, as appears in some cases, have also the elements of equitable estoppel. A waiver may be supported by consideration. But it will appear from the decisions of this court that, to constitute a waiver where there is no consideration, there must be a promise or permission, express or implied in fact, supported only by action in reliance thereon, to excuse performance in the future of a condition or of an obligation not due at the time, when the promise is made, or to give up' a defense not yet arisen, which would otherwise prevent recovery on an obligation. *Though there is often said to be in such case an estoppel and the case said to be distinguishable from a waiver, there is not a true estoppel, for there is no misrepresentation of an existing fact. It may be called 'a promissory estoppel.'* ... We think that this distinction will harmonize many distinctions and will clarify what appears to be some confusion of definition and expression.... If ... the plaintiff acted on that understanding, 'a promissory estoppel' would result and no consideration would be necessary."

306 N.C. at 427, 293 S.E.2d at 756 (emphasis supplied).

The court in the *Wachovia* case was careful to distinguish promissory estoppel from equitable estoppel. *See* 306 N.C. at 429, 293 S.E.2d at 757. It ruled out a recovery on grounds of equitable estoppel, yet held that recovery was justified by the evidence "upon the theory of promissory, as opposed to equitable estoppel." *Id.* Consequently,

the requirement applicable in equitable estoppel cases that there be a misstatement of an existing fact is simply inapplicable where what is involved is promissory estoppel.

At the present stage of the case, action in reliance on the promise to sell doors and frames for $193,121 plus taxes cannot be disputed. It was alleged in the amended complaint: "Plaintiff submitted its bid for the entire project to the Government in reliance upon Defendant's quoted price for the hollow metal doors and frames."

In the case as pleaded by Campbell, the elements of a promissory estoppel are clearly present. Under the well-pleaded allegations of fact, even in the absence of consideration, there was a sufficiently binding promise by Virginia Metal.

Having come so far, we must next deal with the contention of Virginia Metal that, nevertheless, it cannot be held liable since its promise was not in writing. The Uniform Commercial Code has been adopted in North Carolina and N.C.Gen.Stat. § 25–2–201 requires that a contract for the sale of goods involving more than $500 must be in writing. The answer, however, lies in the language of N.C.Gen.Stat. § 25–1–103:

Unless displaced by the particular provisions of this chapter, the principles of law and equity, including ... the law relevant to ... estoppel ... or other validating or invalidating cause shall supplement its provisions.

The question then becomes whether North Carolina's doctrine of promissory estoppel creates an exception to or is displaced by the statute of frauds. There is a split of authority in decisions from states other than North Carolina on the question of whether promissory estoppel is to be deemed an exception to the statute of frauds. *See Ralston Purina Co. v. McCollum,* 271 Ark. 840, 844, 611 S.W.2d 201, 203 (1981) ("The [Uniform Commercial] Code

---

4. The North Carolina court in *Wachovia* stated "These principles are reflected in our own cases, even though they might not have been quite so clearly expounded." 306 N.C. at 428,

293 S.E.2d at 756. The *Colbath* case was said to offer "a lucid explanation of waiver by estoppel." *Id.*

states that the principles of law and equity, including estoppel, supplement the U.C.C. unless displaced by a particular provision . . . . Thus the doctrine of promissory estoppel may be asserted by one party to an oral contract for the sale of goods, to prevent the other party from asserting the defense of the statute of frauds."); *R.S. Bennett & Co., Inc. v. Economy Mechanical Industries, Inc.*, 606 F.2d 182 (7th Cir.1979) (Illinois law interpreted as applying the statute of frauds to bar recovery on a breach of contract theory in the absence of a writing, yet permitting a promissory estoppel approach to succeed notwithstanding the lack of a writing containing the promise); *Warder & Lee Elevator, Inc. v. Britten*, 274 N.W.2d 339, 342 (Iowa 1979) ("We have long recognized promissory estoppel as a means of defeating the general statute of frauds . . . . We hold that the provisions of § 554.2201 do not displace the doctrine of estoppel in relation to the sale of goods in Iowa."); *Decatur Cooperative Association v. Urban*, 219 Kan. 171, 547 P.2d 323 (1976); *Jamestown Terminal Elevator, Inc. v. Hieb*, 246 N.W.2d 736 (N.D.1976).

*Contra: Edward Joy Co. v. Noise Control Products, Inc.*, 111 Misc.2d 64, 443 N.Y.S.2d 361, 362 (N.Y.Sup.Ct. Onondaga Cty. 1981) (The subcontractor's bid was based on a substantial calculating mistake. "It is clear that the possibility of error was sufficiently strong so as to prompt an inquiry by plaintiff and . . . that if Reid had brought plaintiff's inquiry to the attention of Noise Control, most likely the error would have been ascertained before plaintiff relied upon it in submitting its bid.");[5] *Lige Dickson Co. v. Union Oil Co. of California*, 96 Wash. 291, 635 P.2d 103 (1981) (The court refused to adopt as Washington law the concepts of Restatement (Second) of Contracts § 139 (§ 217A in the Tentative Drafts), advancing the rather surprising reason that the Restatement rule would defeat rather than promote uniformity among the several states. A principal purpose of the Restate-

ment has been to promote reasoned uniformity); *Anderson Construction Co., Inc. v. Lyon Metal Products, Inc.*, 370 So.2d 935 (Miss.1979) (another case where the subcontractor's computation error made its bid glaringly low); *C.G. Campbell & Son, Inc. v. Comdeq Corp.*, 586 S.W.2d 40 (Ky.App. 1979) (Only § 2-201 of the U.C.C. is cited; there is no reference to the ameliorating provisions of § 1-103, nor to the Restatement); *Wilkie v. Holdrege Cooperative Equity Exchange*, 200 Neb. 803, 265 N.W.2d 672 (1978); *C.R. Fedrick, Inc. v. Borg-Warner Corp.*, 552 F.2d 852 (9th Cir.1977); *Tiffany, Inc. v. W.M.K. Transit Mix, Inc.*, 16 Ariz.App. 415, 493 P.2d 1220 (1972) (Subcontractor's bid mistakenly calculated on wrong type of highway chip).

While North Carolina has not explicitly committed itself as to the availability *vel non* of promissory estoppel as a means for overcoming the U.C.C. statute of frauds, it has expressed approval of the position taken in Restatement (Second) of Contracts § 139, the cornerstone of the rationale adopted by the courts which have held that promissory estoppel will, in circumstances like those here presented, render inapplicable the U.C.C. statute of frauds. Thus, in the *Wachovia* case itself the court observed that:

> Furthermore, "[a] promise which the promisor should reasonably expect to induce action or forebearance on the part of the promisee . . . and which does induce the action or forebearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires." Restatement (Second) of Contracts § 139 (1981). This view is consistent with that found in cases in which this Court has recognized exceptions to the Statute of Frauds.

306 N.C. at 433, 293 S.E.2d at 759. *See also* Restatement (Second) of Contracts § 90

---

**5.** Such a human error may substantially affect the answer to the question of where, as between the parties, injustice lies. It may, without regard to the statute of frauds, excuse compliance with a written bid, even though the mistake was unilateral, not mutual. *City of Baltimore v. DeLuca-Davis Construction Co.*, 210 Md. 518, 124 A.2d 557 (1956).

(1981); *cf.* Annot., *Comment Note.—Promissory Estoppel as Basis for Avoidance of Statute of Frauds,* 56 A.L.R.3d 1037, 1050 (1974):

> Restatement, Contracts 2d § 217A appears to greatly expand the recognition of the authors of the Restatement that promissory estoppel may be used as a means of avoiding the statute of frauds.

To similar effect, see *Davis v. Crown Central Petroleum Corp.,* 483 F.2d 1014, 1016 (4th Cir.1973) ("It is true, as the plaintiffs have argued, that in exceptional cases, courts of equity will find an estoppel against the enforcement of the statute [of frauds] ....").[6]

In light of the status of what we perceive to be the law that North Carolina courts would apply to the facts of this case, the fact that the promise was entirely oral would not bar recovery.[7] Consequently, the grant to Virginia Metal of judgment on the pleadings or for failure to state a claim upon which relief can be granted was erroneous. The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.

---

**6.** *Davis v. Crown Central* was heavily relied on by Virginia Metal, but examination of its factual ingredients shows that it does not support a conclusion contrary to the one we have reached. Crown Central, at a time when a developing oil shortage was foreseen by all parties, allegedly made promises not supported by consideration that it would deliver fixed quantities of gasoline indefinitely to certain small independent oil dealers. When the crunch came in the early 1970's creating havoc with supplies, Crown Central, despite its promises of continued deliveries, stopped making them altogether to its non-contract customers, the plaintiffs among them. The essential ingredient missing in the suit brought by the filling station operators, however, was a proof of any reliance by them and resulting change of position to their detriment. When the change in marketing conditions occurred, none of the plaintiffs could demonstrate that, relying on promises of continued deliveries into the indefinite future, he or it had himself or itself made any promises to deliver to others. That is in marked contrast to the position of Campbell, which had bound itself to perform substantial undertakings for the Navy, in reliance on the promise of Virginia Metal.

Also, it must be observed that the *Crown Central* case was argued solely in terms of contract *vel non*. No promissory estoppel contention appears to have been made. Certainly none was adverted to in the opinion. Under such circumstances, where an estoppel would be merely equitable in nature, excuse from compliance with the Statute of Frauds requires a showing of fraud. Promissory estoppel, however, is not saddled with a necessity to show fraud to escape the strictures of the statute. Therein lies a significant distinction between equitable estoppel and promissory estoppel. *See Wachovia, supra; Colbath, supra.*

Accordingly, the balance of the quotation from *Crown Central* to which this footnote is appended stating that North Carolina requires a showing of fraud simply is not pertinent.

**7.** Plaintiff also offered an alternative theory stronger perhaps in linguistics than in logic for avoidance of the statute of frauds. Campbell argued that the technical lack of consideration here (the very predicate for the application of promissory estoppel) necessarily implies that no contract existed, and concluded that the statute of frauds, by its terms applicable only to contracts for the sale of goods, is therefore not a bar to enforcement of Virginia Metal's promise.

Since we find that the avoidance of injustice commands the broader conclusion that promissory estoppel renders a promise like the one here enforceable notwithstanding the statute of frauds, we do not determine the merits of such a fine spun construction of the relevant terms.