NANCY SWAIM COCKMAN v. PAMELA A. WHITE

No. 8418DC1315

(Filed 20 August 1985)

1. Unfair Competition § 1— misunderstanding with insurance agent—not a deceptive representation

In an action arising from defendant insurance agent's alleged failure to provide collision insurance on plaintiff's automobile, the trial court correctly granted defendant's motion for a directed verdict on an unfair trade practice claim where plaintiff had been denied collision insurance because of the number of points she and her daughter had accumulated, plaintiff told defendant that her daughter had her own coverage and that her points should be removed from plaintiff's policy, plaintiff assumed defendant was going to attempt to get collision insurance for her, defendant testified that plaintiff's call related to removing the daughter's points from the policy, defendant told plaintiff that she would take care of that, defendant sent a memo to the insurance company to take the daughter off the policy, and plaintiff never asked defendant during their telephone conversation to obtain collision insurance for her.

2. Evidence § 45— value of demolished automobile—witness not familiar with automobile—properly excluded

In an action arising from defendant insurance agent's alleged failure to provide collision insurance on an automobile which was demolished in a collision with a train, the trial court did not err in excluding testimony about the value of the car from an employee of the bank which financed the car where the employee admitted that he had never seen the car, did not know what kind of shape it was in, and that his estimate of value was what the average car of the same make and model would have been worth at that time. The witness could not testify from personal knowledge and plaintiff failed to present any foundation from which he could have offered an opinion of the automobile's value.

3. Insurance § 2.2— failure to procure insurance—no evidence of damages—directed verdict proper

In an action arising from defendant insurance agent's alleged failure to provide collision insurance coverage on an automobile which was demolished in a collision with a train, the trial court properly granted defendant's motion for a directed verdict on the negligence claim predicated upon plaintiff's inability to prove damages where plaintiff produced no competent evidence of market value before the collision and no evidence of the cost of repairs.

APPEAL by plaintiff from *John, Judge*. Judgment entered 6 August 1984 in District Court, GUILFORD County. Heard in the Court of Appeals 6 June 1985.

*R. Horace Swiggett for plaintiff appellant.*

*Nichols, Caffrey, Hill, Evans & Murrelle by Richard L. Pinto for defendant appellee.*

COZORT, Judge.

Plaintiff sued defendant, her insurance agent, to recover damages for defendant's alleged failure to provide collision insurance coverage on plaintiff's automobile, which was totally demolished in a collision with a train. After the jury had reached an eleven to one impasse, the trial court declared a mistrial, reconsidered defendant's motion for directed verdict based on plaintiff's failure to put on evidence of damages to the car, and granted defendant's motion. Plaintiff appeals that action, as well as the court's striking of testimony on the value of the auto prior to the crash and its granting of defendant's motion for directed verdict on plaintiff's unfair trade practice claim under Chapter 75 of the General Statutes of North Carolina. We affirm.

Plaintiff purchased a 1981 Datsun 200SX for $9,120 in October of 1981. She had liability insurance with State Farm Insurance through defendant's agency and had collision coverage with a different agent. When it came time to renew her collision insurance, plaintiff called defendant to get her collision insurance through defendant so that her liability and collision coverage would be with the same agent. Defendant provided temporary collision coverage pending a final decision from the underwriter at State Farm. In a letter dated 13 October 1982, plaintiff was notified by an underwriter from State Farm that her collision insurance would be cancelled 29 October 1982 because of the number of motor vehicle violations and accidents accumulated by plaintiff and her daughter, who was also covered under the collision policy. On about 15 November 1982, plaintiff called defendant to discuss the points which had been assigned to her because of the number of violations and accidents. She told defendant her daughter had moved from her home and had her own coverage and that her points should be removed from plaintiff's policy. Defendant said words to the effect that she "would take care of it." Plaintiff contends the "taking care of it" meant providing collision insurance, though she did not ask defendant specifically to obtain collision coverage for her. Defendant contends that all

plaintiff asked her to do was to remove plaintiff's daughter's points from her policy and that only the removal of those points from the policy was what she said she would take care of. She did not attempt to get collision insurance for plaintiff, and from 29 October 1982, plaintiff had no collision insurance. On 11 December 1982, plaintiff's car was demolished whan a friend of hers drove the car into a train. What was left of the car was repossessed and sold for $1,100 by the bank which had financed its purchase.

Plaintiff sued defendant to recover damages "of at least $8000." Although plaintiff sued under four causes of action, the only two at issue on appeal are her claims that the defendant's failure to provide coverage constituted negligence and that defendant's statements to plaintiff constituted an unfair trade practice in violation of G.S. 75-1.1.

[1] We first address the plaintiff's contention that it was error for the trial court to grant defendant's motion for directed verdict on the unfair trade practice claim. Plaintiff claims that defendant's statements misled her into believing she had collision insurance. She argues that it is sufficient to show that defendant's words had a capacity to mislead or create a likelihood of deception, with no requirement to show bad faith by the defendant. While plaintiff's analysis of the legal standard is correct, *see Marshall v. Miller*, 302 N.C. 539, 276 S.E. 2d 397 (1981), her conclusion that defendant's statement is a deceptive practice under Chapter 75 is misplaced. The evidence shows only a misunderstanding between plaintiff and defendant. Plaintiff never specifically asked defendant during their phone conversation to obtain collision insurance for her. She testified that by discussing her daughter's points and their removal from her policy, she *assumed* defendant was going to attempt to get collision insurance for her. Defendant testified that plaintiff's call related to removing plaintiff's daughter's points from the policy, that she told plaintiff she would take care of that, and that she sent a memo to State Farm to take the daughter off the policy. We do not believe the misunderstanding between plaintiff and defendant constituted a deceptive representation, and we hold that plaintiff's claim under Chapter 75 was subject to directed verdict for defendant.

[2] We next consider plaintiff's contention that the trial court erred in striking testimony about the value of the Datsun from an

employee of the Northwestern Bank. Plaintiff called as a witness Bob Reed, an employee of the bank which financed the car in question when it was purchased by plaintiff in October of 1981. Plaintiff attempted to solicit his opinion on the value of plaintiff's car in December of 1982. He testified that his best estimate of the value of the car would be "[b]etween $7,000 and $8,000. . . . Probably closer to seven—$7,300 or $7,400." On cross-examination, he admitted that he had never seen plaintiff's automobile, did not know what kind of shape it was in, and that his estimate of value was what the average car of the same make and model as plaintiff's would have been worth in December of 1982. In response to a question about plaintiff's car in particular, he replied, "Not having seen the automobile, no sir, I can't, you know, give you an opinion on that car." The trial court then granted defendant's motion to strike Reed's testimony about the value of plaintiff's automobile.

"To introduce evidence on valuation, a proper foundation must be laid. First, it must be shown 'that the witness is familiar with the thing on which . . . [he] professes to put a value and [second] that he has such knowledge and experience as to enable him intelligently to place a value on it.' [Citation omitted.]" *Broughton v. Broughton*, 58 N.C. App. 778, 784, 294 S.E. 2d 772, 777, *disc. review denied*, 307 N.C. 269, 299 S.E. 2d 214 (1982). Plaintiff testified that she did not know what the car was worth. She did not describe its condition in December of 1982. She did testify that it had been involved in one accident before the collision with the train and that her car had approximately 25,000 miles on it. Plaintiff offered no other evidence on the value of the car or of its condition. We hold the trial court correctly struck the testimony of Reed. He could not testify from personal knowledge, and the plaintiff failed to present any foundation from which he could have offered an opinion of the auto's value.

[3] Lastly, we consider whether the court properly granted defendant's motion for directed verdict on the negligence claim, predicated upon plaintiff's inability to prove damages due to her failure to offer any evidence of the value of the car immediately prior to its destruction. Either evidence of the difference in market value before and after the injury or evidence of the cost of repairs would have been sufficient proof of damages. *See, e.g., Light Co. v. Paul*, 261 N.C. 710, 136 S.E. 2d 103 (1964). Plaintiff

produced no competent evidence of market value before and no evidence of cost of repairs. Thus, there was no evidence from which a finder of fact could have determined any measure of damages. We hold the granting of a directed verdict was proper.

Affirmed.

Judges WELLS and JOHNSON concur.