Stephen D. RICE;  and MMR
Properties, LLC,
Plaintiffs,

v.

VITALINK  PHARMACY  SERVICES,
INC.;  Team Care Hendersonville;  and
Mohr  Partners,  Inc., Defendants  and
Third Party Plaintiffs,

v.

Beverly–Hanks & Associates, Inc.;  and
Robin A. Boylan, Jr., Third–Party
Defendants.

No.  1:99CV36.

United States District Court,
W.D. North Carolina,
Asheville Division.

Aug. 22, 2000.

George Ward Hendon, Marjorie C. Redding, Adams, Hendon, Carson, Crow, & Saenger, PA, Asheville, NC, for plaintiffs.

Craig R. Baldauf, Thomas W. Murrell, III, Smith Helms Mulliss & Moore, L.L.P, Charlotte, for Vitalink Pharmacy Services, Inc., Team Care Hendersonville, defendants.

Keith E. Coltrain, Ogletree, Deakins, Nash, Smoak and Stewart, Raleigh, NC, for Mohr Partners, Inc., third-party plaintiff.

Keith E. Coltrain, Ogletree, Deakins, Nash, Smoak and Stewart, Raleigh, NC, for Mohr Partners, Inc., defendant.

John C. Cloninger, John C. Hensley, Jr., Mary E. Euler, Cloninger, Lindsay, Hensley, Searson & Arcuri, Asheville, NC, for Beverly–Hanks & Associates, Inc., Robert A. Boylan, Jr., third-party defendants.

Thomas W. Murrell, III, Smith Helms Mulliss & Moore, L.L.P, Charlotte, for Vitalink Pharmacy Services, Inc., Team Care Hendersonville, third-party plaintiffs.

## MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on Plaintiff's and Defendants' timely filed objections to the Memorandum and Recommendation of United States Magistrate Judge Max O. Cogburn, Jr. Pursuant to standing orders of designation and 28 U.S.C. § 636, the Defendants' motions for summary judgment were referred to the Magistrate Judge for a recommendation as to disposition. The Court notes that Defendant NeighborCare Pharmacy Services, Inc., successor in interest to Vitalink Pharmacy Services, Inc., as well as Defendant NeighborCare TCI, Inc., d/b/a NeighborCare Hendersonville, successor in interest to Team Care, Inc., d/b/a Team Care Hendersonville, have both filed Chapter 11 Bankruptcy Petitions and have cases pending in the United States Bankruptcy Court for the District of Delaware. However, because the motions and objections of both parties were filed and fully briefed prior to the bankruptcy filings, the Court will render a decision on the dispositive motions. Accordingly, the Court adopts the recommendation of the Magistrate Judge in part and will grant the Defendants' motions for summary judgment.

## I. STANDARD OF REVIEW

The Court reviews *de novo* those portions of a Magistrate Judge's Memorandum and Recommendation to which specific objections are filed. 28 U.S.C. 636(b). "The district judge must not be a rubber stamp" and "has a duty to reject the Magistrate Judge's recommendation unless, on *de novo* reconsideration, he or she finds it justified." 12 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3070.2 (1997). Those parts of a Magistrate Judge's Memorandum and Recom-

mendation to which no specific objections are filed are given careful review. *Orpiano v. Johnson,* 687 F.2d 44, 47 (4th Cir. 1982).

Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## II. FACTUAL AND PROCEDURAL BACKGROUND

Between March and May 1998, discussions took place between Vitalink Pharmacy Services, Inc. ("Vitalink") and Plaintiff Stephen D. Rice, a developer of industrial real estate, regarding Vitalink's possible lease of Unit C of Plaintiff's Airport Business Center ("ABC") for a pharmacy operation. Acting on behalf of Vitalink were George Methvin, a local Vitalink manager associated with Defendant Hendersonville Team Care, and Andrew Taguwa, an agent for independent brokers Mohr Partners, Inc. ("Mohr Partners"). Third Party Defendant Robert A. Boylan, Jr., an agent for the Asheville brokerage firm, Beverly–Hanks & Associates, Inc. ("Beverly–Hanks"), acted on behalf of the Plaintiff. **Exhibit D, Deposition of Robert A. Boylan,** *attached to* **Defendant Mohr Partners' Motion for Summary Judgment, filed April 17, 2000, at 14.** On or about March 10, Methvin allegedly did a walk-thru of the property and faxed over a proposed floor plan to Boylan. *Id.,* at 18.

Shortly thereafter, Boylan allegedly received a proposal from Vitalink for leasing the space. *Id.,* at 27, 35. Plaintiff alleges that during this period the parties contemplated Vitalink would begin leasing the space on May 1, 1998, and take possession on June 1, 1998. *Id.,* at 31, 131–32, 153.

On March 19, 1998, Boylan faxed Taguwa a copy of a letter drafted by Plaintiff which stated Plaintiff was preparing to perform work on the ABC Space. The fax also stated that if Boylan had any potential tenants who wanted to move in by June 1, 1998, Plaintiff needed the first month's check and a signed lease within 14 days. *Id.,* at 38; **Exhibit 6, Letter dated March 19, 1998 and attached fax transmittal sheet,** *attached to* **Defendant Mohr Partners' Motion.** Plaintiff never received a signed lease or check from Vitalink. **Boylan Deposition, at 40; Exhibit B, Deposition of Stephen D. Rice,** *attached to* **Defendant Mohr Partners' Motion, at 60–61.** On April 3, 1998, Taguwa sent a letter which instructed Boylan that "[a]ll terms [of a lease] are subject to Board approval reflected through a signed lease document." **Exhibit 53, Letter dated April 3, 1998 and attached fax transmittal sheet,** *attached to* **Defendant Mohr Partners' Motion.** Plaintiff also received a copy of that letter. **Rice Deposition, at 75–77.** About April 21, 1998, Boylan sent leases by overnight mail to Vitalink for signing and on May 1, 1998, faxed final floor plans to Vitalink.[1] **Boylan Deposition, at 83, 85; Rice Deposition, at 81–85.** Vitalink did not respond to these communications. But, during this time, Plaintiff alleges that Taguwa and Methvin stated that although the legal department needed to review documentation of the agreement, "the deal is a go ..." and that the legal approval of the lease documents was merely a "rubber stamp." **Boylan Deposition, at 40–42, 69, 75, 121–22, 129.** Taguwa denies making this statement or anything to its effect. **Exhibit E, Deposition of Andrew W. Taguwa,** *attached to* **Defendant Mohr Partners' Motion, at 73.**

Based upon these alleged assurances that the deal was done, Plaintiff entered into an oral agreement with general contractor Jim Allen Construction Company ("Jim Allen") to perform upfit work to

---

1. Apparently neither of these documents were addressed to any specific person at Vitalink's corporate headquarters and they were not sent to Taguwa or Methvin.

Unit C according to specifications allegedly approved by Vitalink. **Rice Deposition, at 131–33.** It is undisputed that Boylan never received a signed lease or requested or received a letter of intent or an indemnity agreement from Vitalink to cover the upfit work.[2] **Boylan Deposition, at 21, 40, 42–43.**

Jim Allen began upfit work on Unit C according to specifications supplied by Plaintiff on May 1, 1998. On May 26, 1999, Plaintiff wrote a letter to Boylan stating he still had not received a signed lease or a rent check which were allegedly due on May 1, 1998. **Rice Deposition, at 106, 116; Exhibit 15, Letter dated May 27, 1998, *attached to* Defendant Mohr Partners' Motion.** On May 27, Boylan wrote a letter to Vitalink's corporate counsel stating that he had just been made aware of a merger including Vitalink and that the upfit could not continue without Vitalink's immediate response.[3] **Boylan Deposition, at 97–99; Exhibit 16, Letter dated May 27, 1998, *attached to* Defendant Mohr Partners' Motion.** Vitalink's response was that there was no lease agreement. **Boylan Deposition, at 106.** Subsequently, on June 2, 1998, Plaintiff instructed Jim Allen to find a sensible stopping point on the Unit C upfit. Jim Allen stopped work on June 12, 1998, when the upfit of Unit C was approximately 70 percent complete. Jim Allen then sought payment from Plaintiff in the amount of $50,116.40 for the work already performed.

After Plaintiff refused to make payment, Jim Allen sued him in Henderson County Superior Court for $50,116.40. Plaintiff filed an answer denying liability. Plaintiff, who admits that he has never personally made payments to Jim Allen for the upfit work performed on Unit C, is no longer the owner of the ABC space. That property was transferred to MMR Properties, LLC ("MMR"), a limited liability company of which Plaintiff is the sole shareholder. MMR made approximately $25,000 in payments to Jim Allen in 1999 and Plaintiff has not reimbursed MMR for those payments.

In this action, Plaintiff asserts causes of action for breach of contract, negligent misrepresentation, and unfair and deceptive trade practices. Plaintiff seeks to recover $50,116.40 for the cost of the upfit of Unit C and approximately $12,000 for the future removal of the structures. Treble damages are sought by Plaintiff on his claim of unfair and deceptive trade practices. **Plaintiff's Complaint, at ¶'s 35–37.** Once this case was underway, Defendants brought third-party claims for indemnity and contribution against Beverly–Hanks and Boylan.[4] The Third–Party Defendants moved for summary judgment and that motion is before this Court as well.

### III. DISCUSSION

### 1. Motion to Amend

The Magistrate Judge recommended the Court allow Plaintiff to amend the Complaint to join MMR as an indispensable party. Defendants object and contend they would be unduly prejudiced and would require additional discovery prior to trial. However, because this order dismisses all claims against the Defendants, those concerns are moot. Therefore, in

---

2. It is typical practice in the commercial real estate business to get a signed lease document, letter of intent, or indemnity agreement before concluding that a deal is done. **Exhibit C, Deposition of George W. Beverly, Jr., *attached to* Defendant Mohr Partners' Motion, at 5.**

3. On April 27, 1998, Vitalink had publicly announced a merger with another corporation.

4. Although Mohr Partners and Vitalink (with Hendersonville Team Care) are separate parties with their own counsel, they have adopted each other's briefs and exhibits and essentially raise the same arguments in this matter. Thus, to simplify matters, the Court will collectively refer to them as 'Defendants.'

the interest of avoiding duplicative litigation in the future, the Court adopts the Magistrate Judge's recommendation and will grant the Plaintiff's request for MMR to be added as a party plaintiff to this action. Fed.R.Civ.P. 19.

## 2. Breach of Contract

■ The Plaintiff objects to the Magistrate Judge's recommendation that the Statute of Frauds is a bar to Plaintiff's claim for breach of contract. In stating his objections, the Plaintiff reiterates the argument that promissory estoppel renders the Statute of Frauds inapplicable in this case. In support of this theory, Plaintiff continues to rely on *Campbell v. Virginia Metal Indus., Inc.*, 708 F.2d 930 (4th Cir.1983). However, as Defendants and the Magistrate Judge note, *Campbell* has been expressly rejected by the courts of North Carolina. *Home Electric Co. of Lenoir, Inc. v. Hall & Underdown Heating & Air Conditioning Co.*, 86 N.C.App. 540, 358 S.E.2d 539 (1987), *aff'd*, 322 N.C. 107, 366 S.E.2d 441 (1988); *Clark Trucking of Hope Mills, Inc. v. Lee Paving Co.*, 109 N.C.App. 71, 426 S.E.2d 288, *rev. denied*, 333 N.C. 790, 431 S.E.2d 21 (1993). The Court declines to accept the Plaintiff's invitation to adopt the reasoning of *Campbell* in favor of the clear controlling law of North Carolina. Because promissory estoppel may not be used as an affirmative cause of action in this state, the Court finds that the Statute of Frauds bars Plaintiff's claim for breach of contract. *Computer Decisions, Inc. v. Rouse Office Management of North Carolina, Inc.*, 124 N.C.App. 383, 388, 477 S.E.2d 262, 265 (1996). That claim is hereby dismissed.

## 3. Negligent Misrepresentation

■ The Defendants object to the Magistrate Judge's recommendation that summary judgment should be denied on Plaintiff's negligent misrepresentation claim. The Magistrate Judge correctly notes that justifiable reliance is an essential element of a claim for negligent misrepresentation. *APAC–Carolina, Inc. v. Greensboro–High Point Airport Authority*, 110 N.C.App. 664, 431 S.E.2d 508, *rev. denied*, 335 N.C. 171, 438 S.E.2d 197 (1993). The Defendants have made an ample evidentiary showing that a professional developer such as Plaintiff was not reasonable to rely upon an alleged oral promise in light of standard industry practice and prevailing lease law.[5] Boylan Deposition, at 25, 60–61, 74–75, 85–86, 98, 119, 124, 154; Beverly Deposition, at 5; Rice Deposition, at 75, 86, 88; Taguwa Affidavit, at ¶'s 4–5; Exhibit 13, *attached to* Defendant Mohr Partner's Motion. Thus, the burden shifts to the Plaintiff to show that a genuine issue for trial exists. Fed. R.Civ.P. 56(c); *Celotex Corp., supra*. However, Plaintiff has not produced evidence from which a reasonable jury could conclude that Plaintiff was justified in relying on the alleged verbal statement, "it's a done deal." Consequently, the Court will grant Defendants' motion for summary judgment on Plaintiff's negligent misrepresentation claim.[6]

## 4. Unfair and Deceptive Trade Practices

■ The Magistrate Judge recommended that the Court grant Defendants' motions for summary judgment on the is-

---

5. More specifically, the Court finds that the parties in this case were both sophisticated and experienced in commercial real estate deals. They were well aware that long term leases require written contracts, that realtors do not normally have authority to bind their principals, and that letters of intent or indemnity are standard means of protecting a party prior to incurring expenses such as the upfitting of lease space. **Boylan Deposition, at 25; Beverly Deposition, at 5.**

6. In addition, Defendant Mohr Partners raises other issues concerning Plaintiff's negligent misrepresentation claim, including contributory negligence and actual reliance. However, because the negligent misrepresentation claim is hereby dismissed, those concerns are moot and will not be addressed in this opinion.

sue of Plaintiff's claim for unfair and deceptive trade practices. N.C.Gen.Stat. § 75–1.1. To recover under North Carolina's Unfair and Deceptive Trade Practices Act, a plaintiff must prove that the conduct in question was "unfair," which is broader than and includes the concept of "deception." *Opsahl v. Pinehurst Inc.*, 81 N.C.App. 56, 69, 344 S.E.2d 68, 76 (1986) (quoting *Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 263, 266 S.E.2d 610, 621 (1980)).[7] " 'A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.' " *Id.* Whether the conduct was unfair or deceptive is a legal issue for the court. *Ellis v. Northern Star Co.*, 326 N.C. 219, 388 S.E.2d 127 (1990).

▇ After a thorough review of the record in this case, the Court agrees with the Magistrate Judge that Plaintiff has failed to allege conduct which is unfair or deceptive. At best, the Court finds that Plaintiff has alleged a situation of mutual misunderstanding between the parties. In *Cockman v. White*, 76 N.C.App. 387, 333 S.E.2d 54 (1985), the North Carolina Court of Appeals held that a misunderstanding between the plaintiffs and defendants did not give rise to a claim for deceptive trade practices. *Id.* Despite Plaintiff's attempt to distinguish *Cockman*, the Court finds the reasoning of that case applicable to the instant situation. Furthermore, the Court again notes the level of sophistication and experience on the part of both parties in this case. Viewed against this backdrop, the Court is not able to find that the alleged conduct was either unfair or deceptive. *See e.g., Spartan Leasing, Inc. v. Pollard*, 101 N.C.App. 450, 400 S.E.2d 476 (1991) (holding that sophisticated businessmen could not have been mislead about the nature of a guar-

antee agreement); *United States Dev. Corp. v. Peoples Federal Savings & Loan Ass'n*, 873 F.2d 731 (4th Cir.1989) (**"A sophisticated real estate developer such as appellant could not possibly have been deceived by [defendant's] insistence upon and use of the unilateral right of withdrawal."**); *United Roasters, Inc. v. Colgate–Palmolive*, 649 F.2d 985 (4th Cir.1981) (**a breach of contract, even if intentional, does not amount to an unfair and deceptive trade violation without a showing of substantial aggravating circumstances**). Consequently, the Court will adopt the Magistrate Judge's recommendation and will dismiss Plaintiff's claim for unfair and deceptive trade practices.

**5. Third–Party Defendants**

Because all of Plaintiff's claims against the Defendants are hereby dismissed, the Defendants' third-party claims against Beverly–Hanks and Boylan are no longer viable and will be dismissed.

## IV. ORDER

**IT IS, THEREFORE, ORDERED,** that the Plaintiff's Motion to Amend the Complaint is **ALLOWED,** and MMR Properties, LLC, is **JOINED** as a party plaintiff in accordance with Rule 19 of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that the motions for summary judgment filed by Defendants Vitalink and Mohr Partners are **ALLOWED** as to all of Plaintiff's claims.

**IT IS FURTHER ORDERED** that the Third–Party Complaints against Third–Party Defendants Beverly Hanks & Associates, Inc., and Robert A. Boylan, Jr., are moot and are therefore **DISMISSED.**

---

**7.** In order to establish a violation of the statutory prohibition against unfair or deceptive acts or practices, a plaintiff must show (1) an unfair or deceptive act or practice, (2) which is in or affects commerce, and (3) which proximately caused injury. N.C.Gen.Stat.

§ 75–1.1(a); *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 529 S.E.2d 676, 680 (2000). The Court need not address the second and third elements of the claim because Plaintiff has failed to allege conduct which is unfair or deceptive.

A Judgment dismissing this matter in its entirety is filed herewith.

## MEMORANDUM AND RECOMMENDATION

COGBURN, United States Magistrate Judge.

**THIS MATTER** is before the court upon defendant Vitalink Pharmacy Services, Inc.'s Motion for Summary Judgment, defendant Mohr Partner, Inc.'s Motion for Summary Judgment, and defendants Beverly–Hanks & Associates, Inc.'s (collectively "defendants")[1] and Robin A. Boylan, Jr.'s Motion for Summary Judgment. Having carefully considered those motions and the various responses of the parties, the undersigned enters the following findings, conclusions, and recommendation.

## FINDINGS AND CONCLUSIONS

### I. Background

Between March and May 1998, discussions took place between Vitalink and plaintiff regarding Vitalink's possible lease of Unit C of the Airport Business Center ("ABC") for a pharmacy operation. During that process, a number of possible floor plans were reviewed. Prior to sending a final floor plan to Vitalink for approval, and without first obtaining a signed lease or any written authorization from Vitalink, plaintiff entered into an oral agreement with general contractor Jim Allen Construction Company to perform upfit work to Unit C according to specifications allegedly approved by Vitalink.

Jim Allen began upfit work on Unit C according to specifications given to it by plaintiff on May 1, 1998. On May 27, 1998, plaintiff learned that Vitalink had not signed a lease for Unit C and that lease negotiations were on hold. Subsequently, on June 2, 1998, plaintiff instructed Jim Allen to find a sensible stopping point on the Unit C upfit. Jim Allen stopped work on June 12, 1998, when the upfit of Unit C was approximately 70 percent complete. Subsequently, Jim Allen sought payment from plaintiff in the amount of $50,116.40 for the work already performed.

After plaintiff refused to make payment, Jim Allen sued him in Henderson County Superior Court for $50,116.40. Plaintiff filed an answer in that case and denied liability to Jim Allen. Plaintiff, who admits that he has never made payments to Jim Allen for the upfit work performed on Unit C, is no longer the owner of the ABC space. That property was transferred by plaintiff to MMR, a limited liability company, of which plaintiff is the sole shareholder. MMR made approximately $25,000 in payments to Jim Allen in 1999, and plaintiff has not reimbursed MMR for those payments.

In this action, plaintiff asserts causes of action for breach of contract, negligent misrepresentation, and unfair and deceptive trade practices. Plaintiff seeks to recover $50,116.40 for the cost of the upfit of Unit C and approximately $12,000 for the future removal of the upfit. Treble damages are sought by plaintiff on his claim of unfair and deceptive trade practices. It appearing that the amount in controversy exceeds the jurisdictional threshold and that complete diversity exists, this court has jurisdiction over this matter.

### II. Summary Judgment Standard

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the nonmoving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that

---

1. Defendants' motions are treated together to aid the decision-making process. While defendants are represented by separate counsel, their respective motions address, for the most part, the same central issues, *i.e.*, the viability of plaintiff's causes of action.

there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving [sic] party, there is no "genuine issue for trial."

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted; emphasis in the original) (quoting Fed.R.Civ.P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. *Id.* "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Id.,* at 248, 106 S.Ct. 2505. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id.*

[T]he court is obliged to credit the factual asseverations contained in the material before it which favor the party resisting summary judgment and to draw inferences favorable to that party if the inferences are reasonable (however improbable they may seem).

*Cole v. Cole,* 633 F.2d 1083, 1092 (4th Cir.1980). Affidavits filed in support of a defendants' motions for summary judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. *United States ex rel. Jones v. Rundle,* 453 F.2d 147 (3d Cir.1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. *Davis v. Zahradnick,* 600 F.2d 458 (4th Cir.1979).

## II. Plaintiff's Motion to Join MMR

In response to defendants' motions which attack his standing to bring this action, plaintiff has moved to join MMR as an indispensable party. Despite defendants' objections to that joinder, the undersigned finds that MMR is an appropriate and indispensable party to this action, for whatever cause of action plaintiff may have had against these defendants was transferred to MMR along with the real property. Finding further that full discovery has been conducted and that joinder would not be unduly prejudicial or impact trial, the undersigned will recommend that MMR be joined as a plaintiff in this action.

## IV. Breach of Contract Claim: Statute of Frauds

Defendants next contend that plaintiff's cause of action for "breach of contract" should be dismissed under North Carolina's Statute of Frauds, which provides, as follows:

[L]eases and contracts for leasing land exceeding in duration three years from the making thereof, shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith.

N.C.Gen.Stat. § 22–2. Since the alleged lease in this case was for a term greater than three years, Section 22–2 applies. *Computer Decisions, Inc. v. Rouse Office Management of N.C., Inc.,* 124 N.C.App. 383, 388, 477 S.E.2d 262 (1996).

■ The Statute of Frauds is not, however, an absolute bar. Two equitable doctrines or principles—equitable estoppel and the doctrine of part performance—can take an otherwise unenforceable ˙ agreement from the domain of the Statute of Frauds. Plaintiff responsively argues that equitable estoppel saves his breach-of-contract claim from the Statute of Frauds. Defendants correctly reply, however, that equitable estoppel is not a cause of action or a weapon that can be used to aid an affirmative cause of action.

It is well established ... that the doctrine of equitable estoppel does not apply to situations in which the party asserting the estoppel has suffered detriment resulting solely from another party's failure to perform an obligation under the oral agreement.

*Lance J. Marchiafava, Inc. v. Haft,* 777 F.2d 942, 945 (4th Cir.1985) (citations omitted). North Carolina law is in accord. *Home Electric Co. of Lenoir, Inc. v. Hall and Underdown Heating and Air Conditioning Co.,* 86 N.C.App. 540, 358 S.E.2d 539 (1987), *aff'd,* 322 N.C. 107, 366 S.E.2d 441 (1988) (*rejecting Allen M. Campbell Co. v. Virginia Metal Industries,* 708 F.2d 930 (4th Cir.1983)).

Plaintiff argues that his performance was occasioned by a statement from defendants that "the deal is a go." While defendants deny making such a statement, it is taken as true for the limited purpose of the pending motions. The North Carolina Supreme Court, in a most analogous North Carolina case, *Computer Decisions, Inc., supra,* held, as follows:

Furthermore, assuming that Jody Clark's statement that the parties "had a deal" was a promise that defendants thereafter breached, breach of promise alone is insufficient to establish estoppel. Vick v. Vick, 126 N.C. 123, 128, 35 S.E. 257, 258 (1900). We hold that there is no genuine dispute of material fact, and that, as a matter of law, defendants are not equitably estopped from asserting the Statute of Frauds.

*Id.,* at 387, 477 S.E.2d 262. Plaintiff's breach-of-contract claim cannot be saved by equitable estoppel.

■ The only other exception to the Statute of Frauds is the doctrine of part performance. Here, plaintiff contends that he partially performed by improving the leasehold to meet defendants' particularized needs. In some states, part performance of an oral contract can remove the bar of the Statute of Frauds if the part performance consists of acts that would not have been done but for the existence of the contract.

Anticipatory, preparatory, collateral and ancillary acts, performed in reliance on a verbal contract ... done with knowledge of the other party, and if the change in circumstances resulting from such acts are of such nature that the consequences thereof are, or may be, disastrous, the court may enforce the contract, event though the acts are not, strictly speaking, in execution of the contract.

*Pointer v. Ward,* 429 S.W.2d 269, 273 (Mo. 1968). North Carolina, however, is one of a handful of states to wholly reject the doctrine of part performance. *Duckett v. Harrison,* 235 N.C. 145, 69 S.E.2d 176 (1952); *Grantham v. Grantham,* 205 N.C. 363, 171 S.E. 331 (1933). Plaintiff's breach-of-contract claim, therefore, cannot be saved by the final exception to the Statute of Frauds—part performance.

Despite his having asserted a claim for breach of contract which is barred by the Statute of Frauds, and not saved by the common-law exceptions, close review of North Carolina law reveals that plaintiff is not without a cause of action or remedy. The common law of North Carolina provides that a plaintiff who is foreclosed by the Statute of Frauds, but who alleges that he has detrimentally relied on the promise of a defendant, has a cause of action for implied *assumpsit* or *quantum meruit* for the value of the services rendered. Even where an oral contract for the transfer of an interest in real property is made unenforceable by the Statute of Frauds, a party who has made improvements may be refunded his advances. *Kivett v. McKeithan,* 90 N.C. 106 (1884).

In *Pickelsimer v. Pickelsimer,* 257 N.C. 696, 127 S.E.2d 557 (1962), the North Carolina Supreme Court held that the remedy of a promisee who has rendered personal services in consideration of an oral contract to devise real estate, which contract is void under the Statute of Frauds, is found in an action for implied *assumpsit* or *quantum meruit* for the value of the ser-

vices rendered. The measure of such damages is the reasonable value of services rendered by plaintiff, less any benefits received by plaintiff. *Id.* Plaintiff would be limited to recovery of his actual damages. In *Stewart v. Wyrick,* 228 N.C. 429, 45 S.E.2d 764 (1947), the North Carolina Supreme Court explained:

> The contract being unenforceable under the Statute of Frauds, no recovery can be had upon it; no damages can be recovered on account of its breach for the same reason; and upon the same principle, the contract being unenforceable, the value of plaintiff's services cannot be concluded by its terms. In place of the unenforceable promise to devise real estate in consideration of services to be performed, the law substitutes the valid promise to pay their reasonable worth. The mainspring of the Statute of Frauds is to prevent frauds not to promote them.

*Id.* (citation omitted).

It appears, then, that the common law of North Carolina would extend to plaintiff a cause of action or a remedy in these circumstances; however, plaintiff has not explicitly set forth such causes of action in his complaint. The issue is whether the complaint requires amendment to assert such a claim. In a similar situation, *Jamerson v. Logan,* 228 N.C. 540, 46 S.E.2d 561 (1948), the North Carolina Supreme Court held:

> The complaint is broad enough, however, to support a recovery on implied assumpsit to pay the plaintiff the reasonable worth of her services or quantum meruit as expressed in some of the cases, and there is evidence to warrant the submission of the case to the jury on this theory. Indeed, it may be doubted whether the complaint or the evidence shows more than a cause of action for the reasonable worth of plaintiff's services. "Where the plaintiff alleged a contract to pay for services performed, and, upon the trial, failed to prove a special contract, but did prove the performance of the services and their value: Held, that he was entitled to recover upon quantum meruit without amending the complaint."

*Id.,* at 544–45, 46 S.E.2d 561 (citations omitted; *quoting* Third Syllabus, *Stokes v. Taylor,* 104 N.C. 394, 10 S.E. 566).

To that end, the undersigned will recommend to the district court that plaintiff's cause of action for breach of contract be dismissed based on the operation of the Statute of Frauds; but that under the common law of North Carolina, plaintiff be allowed to proceed to trial on the pleadings, inasmuch as the complaint is broad enough for a cause of action for implied *assumpsit* or *quantum meruit* to be inferred.

## V. Negligent Misrepresentation Claim

Justifiable reliance is an essential element of a claim for negligent misrepresentation. *APAC–Carolina, Inc. v. Greensboro–High Point Airport Authority,* 110 N.C.App. 664, 431 S.E.2d 508, *rev. denied,* 335 N.C. 171, 438 S.E.2d 197 (1993). In this case, it has been alleged that an agent of defendants told plaintiff's real estate agent that the commercial lease "was a done deal," and that plaintiff, relying upon such alleged statement, proceeded with an upfit to meet plaintiff's needs. Defendants contend that summary judgment is appropriate because plaintiff, a professional developer, could not reasonably have relied upon an alleged oral promise, in light of industry practice and prevailing lease law. Basically, defendants are arguing that it is no longer reasonable or justifiable for one man to act upon the word of another in the commercial world.

Without doubt, sound business practices would counsel against proceeding without a written agreement. Even though an oral lease of real property exceeding three years is unenforceable, it is not illegal. This court is not in a position to say that, through a course of dealings, plaintiff was not justified in relying upon the alleged

unilateral promise of defendants—"if plaintiff will upfit the property, we will lease it"—to upfit the property. The only way to benefit from a unilateral promise is to give the performance requested. *See Scott v. J.F. Duthie & Co.*, 125 Wash. 470, 216 P. 853 (1923). Finding that genuine issues of material fact remain on "justifiable reliance," the undersigned will recommend that defendants' motions for summary judgment on plaintiff's claim of negligent misrepresentation be denied.

## VI. Unfair and Deceptive Trade Practices Claims

Unfair methods of competition and deceptive acts, in or affecting commerce, are unlawful. N.C.Gen.Stat. 75–1.1. A plaintiff must prove that a defendant has engaged in unfair conduct which offends established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *Tar Heel Ind. v. E.I. duPont de Nemours & Co., Inc.*, 91 N.C.App. 51, 370 S.E.2d 449 (1988). Taken in a light most favorable to plaintiff, the evidence produced in this matter, at most, would support a finding that defendants *negligently* misled plaintiff or failed to follow through on an oral promise. All the parties to this action are sophisticated business people, and it cannot be inferred from the pleadings that there was any inequitable assertion of power or position. *Johnson v. Insurance Co.*, 300 N.C. 247, 266 S.E.2d 610 (1980). Examining the facts surrounding this transaction, the court can find no actionable impact on the marketplace or consumers. *Warfield v. Hicks*, 91 N.C.App. 1, 370 S.E.2d 689 (1988). Not every commercial transaction resulting in litigation forms a basis for an action for unfair or deceptive practices. *Hageman v. Twin City Chrysler–Plymouth, Inc.*, 681 F.Supp. 303 (M.D.N.C. 1988). Negligent misrepresentations, mere disagreements, and misunderstandings do not give rise to a claim for deceptive trade practice. *Cockman v. White*, 76 N.C.App. 387, 333 S.E.2d 54 (1985). The undersigned can discern no reason why

this particular claim should go any further and will recommend that summary judgment be granted in favor of defendants on such claim.

## VII. Third–Party Defendants' Motion for Summary Judgment

Defendants brought the third-party defendants into this action under a theory of indemnity or contribution in the event defendants were found to be liable. Review of the pleadings reveals that the third-party defendants acted merely as a conduit for information between the proposed lessor and the lessee, which included passing on oral statements, some of which defendants now deny making. Despite the practices and policies of real estate professionals in general, third-party defendants were in no way obligated to prevent plaintiff from improving his property without a written lease agreement. Defendants argue that there is evidence sufficient to withstand summary judgment that the conduct of the third-party defendants united in time and circumstance to cause plaintiff's alleged injury and that defendants, therefore, are entitled to seek contribution or indemnification from such parties.

There simply is no evidence that the third-party defendants materially contributed in any manner to the misunderstanding of these parties. If plaintiff is to recover, the recovery will be based on a negligent misrepresentation made by defendants, which third-party defendants allegedly passed on to plaintiff. If defendants prevail, there is no liability of the third-party defendants; if plaintiff prevails, it, by necessity, will be upon what the jury determines to be the actions or promises of defendants, not misinformation the real estate company or agent may have passed along. Defendants simply cannot be held liable for any statement the jury finds that they did not make.

There being no plausible scenario for liability of the third-party defendants, the undersigned can see no reason to keep

them in this action and will recommend that summary judgment be granted in their favor and they be dismissed from this action.

## VIII. Other Requests for Summary Judgment

The undersigned has addressed the substantive summary judgment issues that go to the merits of plaintiff's complaint. As to the remaining issues, the undersigned would recommend that in light of the recommendations contained herein, all other grounds for summary judgment be denied without prejudice at this time, subject to oral resubmission at the close of plaintiff's evidence.

## RECOMMENDATION

IT IS, THEREFORE, RESPECTFULLY RECOMMENDED that

(1) plaintiff's Motion to Amend the Complaint be allowed, and that MMR Properties, LLC, be **JOINED** as a party plaintiff in accordance with Rule 19, Federal Rules of Civil Procedure, or **SUBSTITUTED** as party plaintiff as the successor-in-interest to the named plaintiff in accordance with Rule 25(c), Federal Rules of Civil Procedure;

(2) defendant Vitalink Pharmacy Services, Inc.'s Motion for Summary Judgment and defendant Mohr partner, Inc.'s Motion for Summary Judgment be **ALLOWED** in part and **DENIED** in part, as follows:

   (a) summary judgment be **GRANTED** on plaintiff's cause of action for breach of contract, and such claim be **DISMISSED** with prejudice as barred by the Statute of Frauds, but that claims for implied *assumpsit* and/or *quantum meruit* be inferred from plaintiff's broad complaint, and that the court proceed to trial on such claims during the July 2000 term;

   (b) summary judgment be **DENIED** on plaintiff's claim of negligent misrepresentation;

   (c) summary judgment be **GRANTED** on plaintiff's claim of unfair and deceptive trade practices, and that such claim be dismissed with prejudice; and

   (d) all other requests for summary judgment be **DENIED** without prejudice as to oral reassertion at the close of plaintiff's evidence; and

(3) defendants Beverly–Hanks & Associates, Inc.'s and Robin A. Boylan, Jr.'s Motion for Summary Judgment be **GRANTED,** and that such defendants be **DISMISSED** with prejudice from further defending this action.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within ten (10) days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *United States v. Schronce,* 727 F.2d 91 (4th Cir.), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).

This Memorandum and Recommendation is entered in response to defendant Vitalink Pharmacy Services, Inc.'s Motion for Summary Judgment (# 42), defendant Mohr Partner, Inc.'s Motion for Summary Judgment (# 44), defendants Beverly–Hanks & Associates, Inc.'s and Robin A. Boylan, Jr.'s Motion for Summary Judgment (# 54), and a Motion to Amend contained within plaintiff's response (# 52).

June 20, 2000.