ROSS M. OLIVE AND WIFE, NANCY M. OLIVE v. GREAT AMERICAN IN-
SURANCE COMPANY

No. 8410SC1343

(Filed 6 August 1985)

1. **Appeal and Error § 6— partial summary judgment—right of immediate appeal**

In an action to recover for breach of a fire insurance contract, tortious
breach of contract and punitive damages, the trial court's entry of partial sum-
mary judgment for defendant on the tortious breach of contract and punitive
damages claims was immediately appealable because plaintiffs have a substan-
tial right to have all of their factually related claims tried before the same
judge and jury.

2. **Damages § 11.1; Insurance § 113— refusal to settle insurance claim—tortious
breach of contract—punitive damages—insufficient forecast of evidence**

The trial court properly entered summary judgment for defendant insurer
on plaintiffs' claims for tortious breach of a fire insurance contract and
punitive damages based upon defendant's refusal to settle plaintiffs' insurance
claim where the forecast of evidence showed that the policy is subject to more
than one reasonable interpretation and that defendant promptly and con-
sistently denied plaintiffs' insurance claim based on an interpretation of the
policy that is neither strained nor fanciful.

APPEAL by plaintiffs from *Bailey, Judge*. Judgment entered
18 September 1984 in Superior Court, WAKE County. Heard in
the Court of Appeals 5 June 1985.

This is a civil action in which plaintiffs seek proceeds under
an insurance policy issued by defendant and compensatory and
punitive damages allegedly arising from defendant's tortious
breach of the insurance contract.

Plaintiffs own a tract of land near Apex in rural Wake Coun-
ty. The land was conveyed to them as tenants by the entirety in
1971. A residential structure more than 100 years old was located
on the land and was occupied by plaintiffs and their children as
their principal residence. The residence was insured by Nation-
wide Insurance Co. The limits of liability under the policy were
$30,000 on the structure and $15,000 on the contents. In 1981
plaintiffs began building a new house on the same property as the
old house but separate and apart from it. When the new house
was partially completed, plaintiffs applied to defendant Great
American Insurance Company for a homeowners insurance policy
on the new house. The policy was issued on 8 October 1981 and

was effective that same day. The policy contained the following pertinent provisions:

[Declaration]

DEDUCTIBLE $100 IN CASE OF A LOSS UNDER SECTION I, WE COVER ONLY THAT PART OF THE LOSS OVER THE DEDUCTIBLE STATED.

|  | LIMITS |
|---|---|
| A. DWELLING | $90,000. |
| B. OTHER STRUCTURES | $ 9,000. |
| C. PERSONAL PROPERTY | $45,000. |
| D. LOSS OF USE | $18,000. |

[Policy]

DEFINITIONS

Throughout this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household, and "we", "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

. . .

4. "insured location" means:

    a. the residence premises;

    b. the part of any other premises, other structures, and grounds, used by you as a residence and which is shown in the Declarations or which is acquired by you during the policy period for your use as a residence;

    c. any premises used by you in connection with the premises included in 4a or 4b;

    d. any part of a premises not owned by any insured but where any insured is temporarily residing;

    e. vacant land owned by or rented to any insured other than farm land;

f. land owned by or rented to any insured on which a one or two family dwelling is being constructed as a residence for any insured;

. . .

8. "residence premises" means the one or two family dwelling, other structures, and grounds or that part of any other building where you reside and which is shown as the "residence premises" in the Declarations.

COVERAGES

We cover:

a. the dwelling on the residence premises shown in the Declarations used principally as a private residence, including structures attached to the dwelling;

. . .

We cover:

a. other structures on the residence premises separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line or similar connection are considered to be other structures;

. . .

We cover personal property on the residence premises:

a. owned or used by any insured;

. . .

We cover personal property away from the residence premises anywhere in the world:

a. owned or used by any insured;

. . .

Our liability for personal property away from the residence premises is an additional amount of insurance:

a. not more than 10% of the limit of liability on Coverage C;

b. not less than $1,000.

. . .

The limit of liability for Coverage D is the total limit for all the following coverages. No deductible applies to this coverage.

1. Additional Living Expense. If a loss covered under this Section makes the residence premises uninhabitable, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living. Payment shall be for the shortest time required to repair or replace the premises or, if you permanently relocate, the shortest time required for your household to settle elsewhere. This period of time is not limited by expiration of this policy.

. . .

CONDITIONS

. . .

2. Your Duties After Loss. In case of a loss to which this insurance may apply, you shall see that the following duties are performed:

a. give immediate notice to us or our agent, and in case of theft also to the police.

. . .

c. prepare an inventory of damaged personal property showing in detail, the quantity, description, actual cash value and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

d. as often as we reasonably require:

(1) exhibit the damaged property;

(2) provide us with records and documents we request and permit us to make copies; and,

(3) submit to examination under oath and subscribe the same.

e. submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1) the time and cause of loss;

(2) interest of the insured and all others in the property involved and all encumbrances on the property;

(3) other insurance which may cover the loss;

(4) changes in title or occupancy of the property during the term of the policy;

(5) specifications of any damaged building and detailed estimates for repair of the damage;

(6) an inventory of damaged personal property described in 2.c;

(7) receipts for additional living expenses incurred and records supporting the fair rental value loss;

(8) evidence or affidavit supporting a claim stating the amount and cause of loss.

On 25 October 1981, plaintiffs' old house, which was still occupied by them as their principal residence, was destroyed by fire. Most of plaintiffs' personal property, which was contained in the old house, was also destroyed. In addition, two large trees on plaintiffs' property were damaged by the fire. Plaintiffs promptly notified defendant's agent, James Herndon, who visited the property the next day. Herndon indicated that he "wasn't sure" whether the loss was covered under plaintiffs' policy with Great American and, after checking with the Company, informed plaintiffs that their claim would be denied.

Plaintiffs' loss was covered under their policy with Nationwide, which paid plaintiffs' claim up to the limits of the policy. On 11 December 1981, plaintiffs filed a claim with Great American for the contents of the old house. By letter dated 5 January 1982, that claim was denied. On 16 August 1982, plaintiffs filed another claim with Great American for the contents, the dwelling, additional living expenses, fire department services and damage to trees. This claim was accompanied by a complete inventory of losses and damages and was prepared on the advice of defend-

ant's agent Herndon. Plaintiffs thereafter had several discussions with Herndon and Warren Wright, also an agent of defendant, during which a settlement figure of $55,834.00 was proposed. This proposed settlement was subject to approval by defendant's office in Cincinnati. On 10 September 1982, the Cincinnati office refused to approve the settlement, denying that the losses claimed were covered under the policy. Defendant indicated that it would seek a declaratory judgment and, on 28 September 1982, confirmed by letter its refusal of the proposed settlement.

In addition to damages from the fire itself, plaintiffs allege that they suffered the following incidental damages: While plaintiffs were attempting to obtain settlement of their claim, they were unable to live either in the burned out old house or in the partially constructed new house. From 25 October 1981 until the new home was completed in late 1982, plaintiffs and their family lived with friends and family, in a storage building, in a camper, and finally in the basement of the unfinished new house. As a result of the fire and their living arrangements, plaintiffs incurred additional expenses for driving, eating out and laundry of $1,740.00. Additionally, plaintiff Nancy Olive injured her back escaping from the fire and her recovery was slowed by the unusual living conditions. Plaintiff Ross Olive was forced to use three and a half weeks of accumulated vacation time to pursue settlement of the claim.

On 30 March 1984, plaintiffs filed their complaint asserting three claims for relief. First, plaintiffs allege that defendant breached the insurance contract by refusing to pay plaintiffs for their claimed losses. Second, plaintiffs claim that defendant's refusal to cover the claimed losses and its manner of handling the claim amounted to a violation of the covenant of good faith and constituted a tortious breach of contract. Defendants sought compensatory damages for these first two claims. In their third claim for relief, plaintiffs alleged, "Defendant's actions have been wilful and oppressive and a misuse of power and authority tantamount to outrageous conduct and in reckless and wanton disregard of the plaintiffs' rights under the declaration and policy." Plaintiffs sought $200,000 in punitive damages on the basis of this third claim for relief.

Defendant answered, denying any breach of contract and denying that any alleged breach was tortious or that plaintiffs were

entitled to any damages. Defendant further responded particularly that the losses claimed by plaintiffs were not covered under the policy issued by Great American or, alternatively, that their liability under the policy was limited by its terms.

After both sides had engaged in some discovery, plaintiffs moved for partial summary judgment on the first issue. This motion was denied. Defendant thereafter moved for summary judgment as to all claims, but subsequently withdrew its motion with respect to the first claim. On 18 September 1984, the court entered summary judgment for defendant on plaintiffs' second and third claims. Plaintiffs appealed.

*Holleman and Stam, by Paul Stam, Jr., for plaintiff-appellants.*

*Patterson, Dilthey, Clay, Cranfill, Sumner and Hartzog, by Ronald C. Dilthey and Sanford W. Thompson, IV, for defendant-appellee.*

EAGLES, Judge.

[1] The first question that we consider is whether plaintiffs' appeal from the trial court's entry of partial summary judgment is premature. We hold that it is not. In *Oestreicher v. American National Stores*, 290 N.C. 118, 225 S.E. 2d 797 (1976), the plaintiffs' complaint alleged three claims for relief. The first was for breach of contract; the second was for punitive damages based on the breach of contract; and the third was for anticipatory breach of the same contract. In reversing this court, our Supreme Court held that a plaintiff had a substantial right to have all of his factually related claims tried before the same judge and jury and that an immediate appeal lies from an order allowing summary judgment on fewer than all of the claims. We think that *Oestreicher* is controlling and that plaintiffs here are entitled to an immediate appeal.

[2] In their second argument, plaintiffs contend that the trial court erred in granting summary judgment for defendant as to plaintiffs' second and third claims for relief. They argue that the material in the record before the trial court presents an issue of material fact and that defendant was not entitled to summary judgment as a matter of law. In support of this argument, plaintiffs rely heavily on this court's recent opinions in *Dailey v. In-*

*tegon Ins. Corp.*, 57 N.C. App. 346, 291 S.E. 2d 331 (1982) (*Dailey I*) and *Payne v. N.C. Farm Bureau Mutual Ins. Co.*, 67 N.C. App. 692, 313 S.E. 2d 912 (1984). Both of those cases, like the present one, involved a failure by the defendant insurance companies to settle the loss claims of plaintiffs. In their complaints, those plaintiffs alleged that the failure of the defendant insurance companies to settle their claims was in bad faith, amounting to a tortious breach of contract and entitling plaintiffs to punitive damages. In each case, the claims of bad faith and punitive damages were dismissed by the trial court on defendant's motions to dismiss under G.S. 1A-1, Rule 12(b)(6). We reversed the trial court in each case, holding that plaintiffs had alleged facts which, if true, would establish a tortious breach of contract entitling plaintiffs to claim punitive damages.

Although plaintiffs here have pleaded the same claims pleaded in *Dailey I* and *Payne,* a different question is presented because plaintiffs' appeal is from an order allowing summary judgment for defendant. The issue here is not whether, as in *Dailey I* and *Payne*, plaintiffs have sufficiently alleged a claim for relief but whether, based on the pleadings, affidavits, depositions and other material submitted in support of and in opposition to the motion, there is an issue of material fact as to the claims that would require them to be submitted to a jury. *Singleton v. Stewart*, 280 N.C. 460, 186 S.E. 2d 400 (1972); *Loy v. Lorm Corp.*, 52 N.C. App. 428, 278 S.E. 2d 897 (1981). We hold that no issue of material fact has been shown to exist here and that the trial court properly allowed defendant's motion for summary judgment.

Plaintiffs devote considerable energy and space in their brief to arguments that are more appropriate to their breach of contract claim: whether and to what extent the policy issued by defendant covers the losses claimed by them. That issue was not adjudicated below and is not before us now; it remains a question of fact for the jury. In our consideration here of whether plaintiffs' allegations as to the second and third claims are supported sufficiently to withstand defendant's summary judgment motion, however, we assume that plaintiffs have established their breach of contract claim. The question that we must answer then is whether on the basis of the materials before the court, a jury could find that the assumed breach of contract was under cir-

cumstances which amount to a tort and, if so, whether those circumstances could warrant an award of punitive damages.

Plaintiffs' forecast of the evidence tends to show that they dealt with two local agents of defendant Great American Insurance Company. One of the agents, Herndon, was on the scene the day after the fire, placed plaintiffs' claim by telephone and promptly communicated to plaintiffs that it would be denied. Plaintiffs nevertheless submitted a claim of loss to defendant that was promptly denied. With the help of agent Herndon, plaintiffs submitted yet another claim to defendant that was denied. After further investigation and negotiations with plaintiffs, agents Wright and Herndon proposed a settlement conditioned on approval from the home office. The home office rejected the proposed settlement.

Plaintiffs' argument that this is evidence of bad faith appears to be premised almost entirely on their contentions that defendant has not interpreted the policy correctly. Plaintiffs in their brief concede (1) that the new house was the dwelling intended to be covered under the policy and (2) that the old house was an "other structure" as defined by the policy. Plaintiffs contend that the old house was nevertheless part of the "residence premises" and that its destruction by a "covered peril," i.e., fire, entitles them to the full coverage provided in the policy for personal property loss, loss of use, and additional coverages. Plaintiffs argue that defendant's continued denial of coverage, despite the clear language of the policy, and the conduct of agents Herndon and Wright amounts to a bad faith breach of contract under circumstances of such rudeness, oppression and disregard for their rights that plaintiffs are not only entitled to compensatory damages for the tortious breach but also to punitive or exemplary damages for defendant's "outrageous conduct."

Defendant contends that the issue of coverage is not involved in this appeal and does not argue it. In their response below, however, their denial of coverage was based on two theories: (1) that the claimed personal property losses did not occur in connection with the destruction of the "residence premises" and (2) that the personal property damaged in the fire was specifically covered by other insurance.

While the issue is not before us, it seems clear from the record that the trial court properly determined that the interpretation of the policy was a question of fact for the jury and properly denied plaintiffs' motion for summary judgment on that issue. Defendant argues that, because the trial court denied defendant's summary judgment motion and determined that the question of coverage was for the jury, the claim was clearly the basis of an honest disagreement between the parties and that plaintiffs' claim of tortious breach and punitive damages were required to be dismissed. Though we have rejected plaintiffs' argument and hold for defendant here, we do not agree with defendant's argument. Though we express no opinion as to the propriety of defendant's denial of plaintiffs' claim, we think that the policy is clearly open to more than one reasonable interpretation, especially in view of plaintiffs' particular living situation at the time of the fire. Further, we do not think that the actions of defendant or defendant's agents in dealing with plaintiff evidenced any bad faith on the part of defendant that would support a claim of tortious breach of contract should the jury in fact decide that the contract was breached. Necessarily, there can be no claim for punitive damages if there has been no tort committed. It appears that defendant here promptly and consistently denied plaintiffs' insurance claim based on an interpretation that is neither strained nor fanciful, regardless of whether it is correct. Further, while defendant's agents may have provided plaintiffs with inaccurate advice, they did so apparently in good faith, with the desire to be helpful and perform their duties, not with the intent to injure plaintiffs or with a disregard for plaintiffs' unfortunate predicament.

It is instructive to compare the facts of this case with the fact situation in the recent case of *Dailey v. Integon Ins. Corp.*, 75 N.C. App. 387, 331 S.E. 2d 148 (1985) (*Dailey II*) which involved the post-verdict appeal in the trial resulting from the *Dailey I* remand. In *Dailey II* plaintiff produced evidence that defendant and defendant's agent conducted an investigation into the origin of a fire that destroyed plaintiffs' house while plaintiff was out of town. Arson was the suspected cause of the fire but plaintiff had been cleared of suspicion by local law enforcement officials. Nevertheless, defendant's agent conducted his investigation as if plaintiff were a suspect, implicating plaintiff to his neighbors and

in the community as the arsonist and otherwise creating ill will toward plaintiff. There was evidence that the agent offered money to people to implicate plaintiff in the fire. The evidence in that case further shows that defendant delayed the investigation of the fire, even though its potential liability was immediately clear; that defendant caused plaintiff to incur substantial expense and inconvenience; that its investigation of the claim was not conducted in a reasonable manner; and that it proposed a settlement that was patently unreasonable and unfair. The jury in that case found that defendant had acted in bad faith and awarded punitive damages to plaintiff. The trial judge entered judgment n.o.v. for defendant on the tortious breach and punitive damages claims because, in his opinion, their claims were not recognized in North Carolina law. On appeal, this court reversed the trial court, holding that the claims were recognized in our law and that plaintiff was entitled to an award if the jury found that he had proved his allegations.

While it is not clear what minimum proof would be sufficient to require that the issues of tortious breach of contract and punitive damages be submitted to the jury, the distinction between *Dailey II* and the instant case is that here plaintiffs simply did not meet their burden. The record before us and before the trial court contains nothing that supports plaintiffs' allegations. While we are not reluctant to allow the pleading of such claims, *see Dailey I* and *Payne v. N.C. Farm Bureau Mutual Ins. Co.*, both *supra*, or recovery on those claims when warranted, *see Dailey II*, *supra*, we approach these issues with caution. As our Supreme Court noted in *Newton v. Standard Fire Ins. Co.*, 291 N.C. 105, 229 S.E. 2d 297 (1976), exposing insurers to "liabilities beyond those called for in the insurance contract . . . except for the most extreme circumstances, would . . . be detrimental to the consuming public whose insurance premiums would surely be increased to cover them." *Id.* at 116, 229 S.E. 2d at 303.

Lest we be misunderstood, we emphasize again that the trial court's determination of plaintiffs' summary judgment motion on the first claim did not influence our determination of the propriety of its rulings on the second and third claims.

For the reasons stated above, the judgment of the Superior Court is affirmed and the cause remanded for trial on the issue of liability.

Affirmed and remanded.

Judges BECTON and PHILLIPS concur.