UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

TOPSAIL REEF HOMEOWNERS
ASSOCIATION,

*Plaintiff-Appellant,*

v.

ZURICH SPECIALTIES LONDON, LIMITED,
a/k/a Zurich Re (U.K.) Limited;
ELLISTON,

*Defendants-Appellees,*

WARD THG,

*Defendant.*

No. 00-2115

Appeal from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
James C. Fox, District Judge.
(CA-98-48-7-F)

Argued: April 5, 2001

Decided: May 25, 2001

Before WILLIAMS, MICHAEL, and TRAXLER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

## COUNSEL

**ARGUED:** Jesse Thomas Cox, Jr., COX & ASSOCIATES, Wrights-
ville Beach, North Carolina, for Appellant. Douglas McCorkle Mar-

tin, Rebecca Bartholomew Wofford, POYNER & SPRUILL, L.L.P., Charlotte, North Carolina, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Topsail Reef Homeowner's Association (Topsail) initiated this civil action against Zurich Specialities (Zurich), an insurer, and Elliston, an independent consulting firm, for damages arising out of Zurich's breach of an insurance policy. Following a jury trial in the United States District Court for the Eastern District of North Carolina, Southern Division, the jury awarded Topsail $362,853.60 in damages. Topsail appeals from the district court's orders granting summary judgment as to Zurich and Elliston on Topsail's unfair and deceptive trade practices claims, dismissing Elliston as a defendant to the action, granting summary judgment in favor of Zurich as to Topsail's bad faith refusal to settle claim, and denying Topsail's motion for a new trial on the contract claim. Finding no reversible error, we affirm.

I.

A.

Because this is an appeal from an entry of summary judgment, we accept the facts as alleged by Topsail as true and view the permissible inferences to be drawn from the underlying facts in the light most favorable to Topsail, the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). On May 4, 1996, Topsail renewed its insurance policy with Zurich, whereby Topsail Reef Condominiums, a beach-front condominium consisting of eight multi-unit residential buildings, was insured against losses resulting from wind and wind-driven rain in amounts up to $4.4 mil-

lion per occurrence. On July 12, 1996, Hurricane Bertha struck Topsail Island, resulting in damage to Topsail Reef Condominiums. After receiving a property loss notice from Topsail, Zurich retained Ward-THG (Ward) as a claim adjuster. On September 20, 1996, Topsail submitted a proof of loss claim to Zurich for approximately two million dollars. On the same day, Zurich agreed to pay the total amount of the claim, and checks totaling that amount were issued within seven days.

On August 23, 1996, Topsail contracted with Hale Construction (Hale) to perform the restoration work. On September 6, 1996, while repairs from Hurricane Bertha were still in progress, Hurricane Fran struck Topsail Island, resulting in additional damage to Topsail Reef Condominiums. Zurich retained Ward to adjust this loss and instructed Ward to avoid duplicate payments for repairs that Zurich had already paid but had not yet been completed after Hurricane Bertha and before Hurricane Fran. To that end, in November of 1996, Ward began preparing an estimate of the scope of loss for the combined damage resulting from Hurricanes Bertha and Fran. At the same time, Hale began preparing its own estimate for Topsail's use. Ultimately, Hale estimated approximately $500,000 more in hurricane-related damage than did Ward.

On March 25, 1997, Zurich hired Elliston to monitor the claim process. Elliston, in turn, hired Loss Control Recovery (LCR) to represent Zurich in the claim adjustment process. Zurich then arranged for LCR, Ward, Topsail and Hale to meet on April 8, 1997 for the purpose of reconciling the differences in estimates.

On May 29-30, 1997, Ian Scott, a representative of Zurich, visited Topsail's representatives to discuss the claim adjustment process. During this visit, Scott asked Ward to withdraw from the claim adjustment process due to Topsail's concerns regarding Ward's adjustment of the loss. Scott authorized Topsail to negotiate with Hale as to the scope and amount of repairs and to work with LCR to reconcile the differences between the estimates and to submit a final claim to Zurich.

On June 11, 1997, Topsail submitted to Zurich an incomplete handwritten claims summary, purportedly based upon a reconciliation of

the draft Ward estimate and the Hale estimate.[1] Topsail's claims summary of June 11, 1997 provided for an initial claim for both hurricanes of $3,823,201.

On August 28, 1997, Topsail submitted a claims summary that included most of the supplemental items that were excluded from the June 11th summary. In the August summary, Topsail added the supplemental claims to the $3,823,201 figure from the June 11th summary, subtracted the two million dollars that had already been paid for Hurricane Bertha, and arrived at an ultimate claim of $2,274,245.90 for losses related exclusively to Hurricane Fran.[2] Thus, for the combined damage resulting from Hurricanes Bertha and Fran, Topsail sought over four million dollars.

On September 19, 1997, Elliston responded on behalf of Zurich to Topsail's submitted claims summaries by disputing various portions of the claims summaries as including repairs outside the scope of the insurance policy. First, Elliston noted that Topsail had not properly reconciled the Ward and the Hale estimates. Additionally, Elliston contended that the submitted claims summary included non-hurricane related damage. Elliston also requested documentation for specific line items and specifically informed Topsail that it could not finalize the claim until Topsail provided Zurich with the contracts that Topsail entered into with Hale. Finally, Elliston deducted amounts for duplications between the two hurricanes and for unreasonable prices. Elliston attached an interim proof of loss in the amount of $162,607.38, which represented the undisputed amount Zurich owed to Topsail without further documentation.

On September 29, 1997, Topsail's president sent Elliston a letter, in which Topsail refused to provide the requested documentation and information, noting that all documentation previously had been provided. Topsail also refused to address Zurich's other outlined concerns.

---

[1]The June 11th summary did not include estimates for electrical repairs, walkways, painting, or power washing.

[2]The August summary was not a finalized claim, in that it provided that unspecified costs were excluded from the submitted claims summary and would be submitted at a later date.

## B.

On February 24, 1998, Topsail initiated suit against Zurich, Ward, and Elliston in the North Carolina General Court of Justice, Superior Court Division.[3] Topsail alleged bad faith refusal to settle and unfair and deceptive trade practices arising out of Zurich's failure to pay the full amount of the Hurricane Fran claim, as submitted by Topsail in its June and August claims summaries. The case was removed to the United States District Court for the Eastern District of North Carolina pursuant to diversity jurisdiction.

On May 28, 1999, Zurich and Elliston jointly moved for summary judgment on all claims. On October 13, 1999, following status and settlement conferences, the district court granted summary judgment in favor of Zurich and Elliston on the bad faith refusal to settle and unfair and deceptive trade practices claims, but it permitted Topsail to amend its complaint to allege a breach of contract claim against Zurich. The district court also dismissed Elliston from the suit.

Topsail filed an amended complaint, alleging only a breach of contract claim against Zurich arising from Zurich's alleged breach of the insurance policy. A jury trial commenced on April 4, 2000, and Topsail sought monetary damages in the amount of $723,707.[4] On April 10, 2000, the jury returned a verdict finding Zurich liable for breach of the insurance policy, but it awarded Topsail only about half the amount sought, $361,853.50. On April 20, 2000, Topsail moved for a new trial on the issue of damages. On May 2, 2000, Topsail moved to vacate the district court's previous order granting summary judgment in favor of Elliston and Zurich on the unfair and deceptive trade practices claim and the bad faith refusal to settle claim. On July 12, 2000, the district court denied Topsail's motions. On August 11, 2000, Topsail filed a notice of appeal with this Court.

---

[3]Ward was voluntarily dismissed from the suit prior to trial.

[4]Prior to trial, Zurich had made payments over time to Topsail totaling $3,645,877.58. As previously noted, Zurich paid Topsail approximately two million dollars for damages related to Hurricane Bertha. Zurich also paid Topsail the following interim amounts: $950,000 in May 1997, $375,000 in August 1997, $162,607.38 in November 1997, and $208,742.00 in April 1998.

On appeal, Topsail alleges that the district court erred by granting summary judgment in favor of Zurich and Elliston as to Topsail's unfair and deceptive trade practices claim, by granting summary judgment in favor of Zurich and Elliston as to Topsail's bad faith refusal to settle claim, and by excluding evidence related to Topsail's alleged authority to settle its own claim. We address each argument in turn.

## II.

Topsail first contends that the district court erred by entering summary judgment in favor of Zurich as to Topsail's claim that Zurich violated North Carolina's version of the Unfair and Deceptive Trade Practices Act (UDTPA). *See* N.C. Gen. Stat. § 75-1.1 (1999). The district court granted summary judgment in favor of Zurich because it held that, as a matter of law, the facts alleged by Topsail failed to establish the essential elements of an unfair and deceptive trade practices claim. We review de novo the district court's grant of summary judgment. *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 274 (4th Cir. 1995).

To establish a claim under the UDTPA, Topsail must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs. *See* N.C. Gen. Stat. § 75-1.1(a); *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 507 S.E.2d 56, 63 (N.C. App. 1998). The determination of whether an act or practice is an unfair or deceptive practice is a question of law for the court. *See Ellis v. Northern Star Co.*, 388 S.E.2d 127, 131 (N.C. 1990). The terms "unfair" and "deceptive" were defined by the North Carolina Supreme Court in *Johnson v. Phoenix Mut. Life Ins. Co.*, 266 S.E.2d 610 (N.C. 1980), *overruled on other grounds by Myers v. Chapman, Inc. v. Thomas G. Evans, Inc.*, 374 S.E.2d 385, 391-92 (N.C. 1988):

> What is an unfair or deceptive trade practice usually depends upon the facts of each case and the impact the practice has in the marketplace. . . . The concept of "unfairness" is broader than and includes the concept of "deception." A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

*Id.* at 621 (citations omitted).

Topsail points to three types of conduct to argue that material issues of fact exist as to whether Zurich violated the UDTPA. As discussed below, however, the evidence with respect to each of Topsail's allegations does not support a finding that Zurich's actions in negotiating the claim settlement with Topsail were in any way inherently unfair, unscrupulous, immoral, or otherwise injurious to consumers. Therefore, the district court did not err by resolving Topsail's UDTPA claim in favor of Zurich as a matter of law.

A.

Topsail first argues that Zurich, through Elliston, misrepresented the deductible due under the policy in violation of N.C. Gen. Stat. § 58-63-15(11)(a) (providing that misrepresentation of pertinent facts or insurance policy provisions relating to coverage constitutes an unfair and deceptive trade practice).[5]

Topsail's insurance policy contains a schedule of insured values that are used to calculate the deductibles. The schedule provides that the deductible is 2% of the value of the building. It establishes a value of $500,000 per building; there are eight buildings, which makes the deductible $10,000 per building or $80,000 per occurrence.

Contrary to this schedule, Elliston informed Topsail that the deductible per occurrence was $150,000. Elliston's mistake in computing the deductible derived from a memorandum from Topsail's insurance agent, Jardine Southern Risk, in which Jardine noted that the deductible was calculated using the total insured value of each building, *including excess values*. Attached to the memorandum was a Building Schedule, which set forth the total insured values, including excess values, of each building. It establishes a value of over

---

[5]N.C. Gen. Stat. § 58-63-15(11) defines unfair or deceptive acts in the context of insurance. Committing any form of conduct listed therein "operates as a per se instance of unfair or deceptive trade practices under § 75-1.1." *Murray v. Nationwide Mut. Ins. Co.*, 472 S.E.2d 358, 363 (N.C. App. 1996).

$900,000 per building, making the deductible approximately $18,000 per building or $150,000 per occurrence.

As Zurich concedes, Elliston's computation of the deductible pursuant to the Jardine memorandum was erroneous because the Building Schedule attached thereto was not part of the insurance policy. Zurich argues, however, that the facts underlying the misrepresentation compel the conclusion that the misrepresentation was the result of a reasonable misunderstanding and was not intentionally deceitful. We agree.

We note that, according to North Carolina law, a negligent misrepresentation as to a policy term is sufficient to establish an UDTPA claim, and good faith or ignorance of falsity is not a defense to an action under § 75-1.1. *Forbes v. Par Ten Group, Inc.*, 394 S.E.2d 643, 651 (N.C. App. 1990) ("That defendants may have made these misrepresentations negligently and in good faith, in ignorance of their falsity, and without intent to mislead, affords no defense to an action under [the UDTPA]."); *see also Pearce v. American Defender Life Ins. Co.*, 343 S.E.2d 174, 180 (N.C. 1986) ("[E]ven a truthful statement may be deceptive if it has the capacity or tendency to deceive."). Furthermore, any alleged contributory negligence by Topsail in failing to correct Elliston's mistaken belief as to the deductible calculation is irrelevant in an action under the UDTPA.[6] *Winston Realty Co., Inc. v. G.H.G., Inc.*, 331 S.E.2d 677, 680-81 (N.C. 1985). Nevertheless, a reasonable, non-negligent misunderstanding regarding a policy term is insufficient to ground an UDTPA claim. *Cockman v. White*, 333 S.E.2d 54, 55 (N.C. App. 1985); *cf. Olive v. Great American Ins. Co.*, 333 S.E.2d 41, 46 (N.C. App. 1985) (holding that no tortious conduct occurred when the insurer's interpretation of the policy term was "neither strained nor fanciful, regardless of whether it was correct").

---

[6]On several occasions, Elliston made clear to Topsail that it was relying upon the Jardine memorandum and Building Schedule for its deductible calculations. Zurich argues that Topsail was partially to blame for the misunderstanding because Topsail failed to correct Zurich's computation of the deductible and failed to provide a correct Building Schedule.

The Jardin memorandum explicitly provided that the deductible was to be calculated using the excess values, and the Building Schedule established the relevant values. Topsail does not refute that the Jardine memorandum and Building Schedule were reasonable bases to rely upon in calculating the deductible. Nor does Topsail allege facts which, if true, would permit an inference that Elliston's computation of the deductible was otherwise deceitful or unfair. Additionally, Topsail was not harmed by the misrepresentation. Thus, the district court was correct in determining that, as a matter of law, this misrepresentation is insufficient to establish an UDTPA claim.

B.

Topsail next argues that a material issue of fact exists as to whether Zurich failed to negotiate the settlement of the claim in good faith, thereby precluding summary judgment in favor of Zurich as to its liability under the UDTPA. In *Gray v. North Carolina Ins. Underwriting Ass'n*, 529 S.E.2d 676 (N.C. 2000), the North Carolina Supreme Court held that an insurance company violates the UDTPA by "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." *Id.* (quoting N.C. Gen. Stat. § 58-63-15(11)(f)).

Although Topsail contends that *Gray* controls our resolution of this issue, a brief discussion of *Gray* illuminates why it is inapplicable. In *Gray*, the insurer issued a commercial windstorm and hail policy of insurance covering the Tower Circle Motel, which was located in the Village of Burton on Hatteras Island. The policy insured the Tower Circle Motel against windstorm and hail damage but not against damage arising from flooding or rain.

On August 31, 1993, Hurricane Emily struck the Outer Banks and caused extensive damage to Hatteras Island, including the Tower Circle Motel. Plaintiffs timely filed a claim under their policy with the insurer for the wind damage to their property. The insurer's claim adjuster estimated the amount of damage caused to the insured property by wind. The claim adjuster's estimates later were corroborated in large part, but the insurer refused to pay the claim. *See id.* at 678-79. Under these facts, the North Carolina Supreme Court held that liability was clear and that the insurer acted in bad faith by "arbitrarily"

refusing to pay the claim based upon its claim adjuster's estimates. *See id.* at 683-84.

Unlike in *Gray*, Zurich reasonably questioned the validity of Topsail's estimates because those estimates were not substantially corroborated and did not accurately represent hurricane damage. First, Topsail improperly reconciled the Hale and Ward estimates. Ward's estimate had been $3.7 million, whereas Hale's had been $3.8 million. Topsail took the Ward benchmark and added to it costs for repairs that were included in the Hale estimate but were excluded from the Ward estimate. Throughout the claim monitoring process, LCR made Topsail aware that this method of reconciling the Ward and Hale estimates was in dispute. Additionally, Zurich reasonably believed that Topsail submitted duplicate claims by inserting charges for line items that were also included in the benchmarked estimate. For example, the adjuster's benchmark included charges for wallpaper seam repairs and cleaning carpets. Topsail then submitted itemized claims for wallpaper seam repairs and cleaning carpets, totaling $18,473.30. Further, Topsail failed to provide Zurich with the contracts that Topsail signed with Hale, which Zurich informed Topsail were necessary to finalize the claim. Finally, Topsail failed to provide Zurich with additional documentation, as was requested by Zurich.

Zurich's agents were involved with the claim adjustment process and advised Topsail as to Zurich's position regarding these issues throughout Topsail's negotiation with Hale, but Topsail ignored their concerns and input. Moreover, by returning a verdict awarding half of the amount of damages sought by Topsail, the jury rejected Topsail's contention that Topsail's estimate of damage represented a reasonable scope of hurricane-related repairs. The jury's verdict demonstrates that Topsail's claim was never substantially corroborated but instead was substantially undermined. Because Zurich had reasonable bases to challenge the validity of Topsail's submitted claim, *Gray* is not controlling.[7] Accordingly, drawing all inferences

---

[7]*Gray* is further distinguishable because Zurich paid Topsail's initial claim and continued to make interim payments, even though liability was not clear, whereas in *Gray*, the insurer "arbitrarily" selected an estimate that was more than a third less than what its adjuster recommended and refused to pay anything on the claim unless the policy holder accepted the lesser offer as a full settlement of its claim under the policy. *See Gray v. North Carolina Ins. Underwriting Ass'n*, 529 S.E.2d 676, 679 (N.C. 2000).

in favor of Topsail, as we must, Topsail has failed to demonstrate a material issue of fact as to whether Zurich complied with its obligation to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Topsail's claim, which was reasonably in dispute.[8]

### C.

Finally, Topsail argues that Zurich violated the UDTPA by engaging in conduct that "amounts to an inequitable assertion of its power or position." (Appellant's Br. at 13) (citing *Petersen v. State Employees Credit Union*, 115 Bank. Rep. 873 (Bankr. M.D. N.C. 1990)). Topsail argues that because it was "powerless" against Zurich, as its insurer, Zurich engaged in unfair and deceptive trade practices by rejecting the claim submitted by Topsail in an attempt to force Topsail to settle for less than it was due under the insurance policy. As noted above, Zurich had valid, reasonable bases for challenging the claim submitted by Topsail. Additionally, Topsail is incorrect to assert that the amount it claimed in damages is an amount it was owed under the policy; the jury verdict discredits this assertion. Topsail points to no evidence demonstrating that Zurich believed the claim to be valid but disputed it for the purpose of forcing Topsail to settle for less than what was owed under the policy. In fact, the interim payments made by Zurich, totaling over three million dollars, directly refute Topsail's contention that Zurich was inequitably denying payments for the purpose of forcing an unfair settlement. In short, even after having the benefit of a full trial, Topsail provides no support for the proposition that Zurich acted in an inequitable manner throughout

---

[8]As an alternative argument, Topsail contends that Zurich's removal of Ward as the claim adjuster demonstrates Zurich's failure to negotiate the settlement in good faith. The record reflects that Topsail removed Ward because there was a breakdown in the negotiations process between Topsail, Hale, and Ward, particularly regarding the payment for electrical repairs. In an effort to expedite the claim process, Zurich asked Topsail whether it would be amenable to working with Hale and LCR, without the assistance of Ward, to finalize the claim. Topsail agreed. Thus, the only inference to be drawn from the removal of Ward and the provision of LCR to assist Topsail in finalizing the claim is that Zurich was making a good faith effort to resolve the claim process in as equitable and prompt a manner as was feasible. Accordingly, the removal of Ward and provision of LCR does not provide a basis for an UDTPA claim.

the claim settlement process. Thus, the UDTPA claim against Zurich fails as a matter of law.

### III.

We turn next to Topsail's argument that the district court erred by granting summary judgment in favor of Elliston on the UDTPA claim. The district court held that Topsail's UDTPA claim against Elliston failed as a matter of law because Topsail failed to allege facts that, if true, would support an UDTPA claim against Elliston.[9]

In support of the UDTPA claim against Elliston, Topsail points to the following conduct: (1) Elliston first recommended to Zurich that Zurich dispute Topsail's submitted claim; (2) Elliston recommended that Zurich pay less than Topsail requested as an interim payment; and (3) Elliston misrepresented facts to Zurich when it disavowed Topsail's authority to adjust its own claim in the manner Topsail felt was appropriate. We address each of Topsail's allegations in turn.

### A.

Elliston hired LCR to monitor the claim process and to help Topsail adjust the claim in a reasonable manner. The correspondence between LCR, Elliston, and Zurich indicates that Topsail was dis-

---

[9]As an alternate rationale for denying Topsail's UDTPA claim against Elliston, the district court held that, because Elliston was hired by Zurich and reported only to Zurich, Topsail failed to establish that Elliston owed Topsail a duty, which the district court held was a necessary element of an UDTPA claim. North Carolina has not addressed whether, absent a contractual relationship, a duty is required to establish an UDTPA claim. Nor has North Carolina defined the extent of the commercial relationship necessary to sustain an UDTPA claim. North Carolina cases exist in which the plaintiff asserts an UDTPA claim against the claim adjuster, which if proper, would militate against the district court's alternate holding, but North Carolina courts have never ruled on the propriety of doing so. *Anderson v. Gooding*, 265 S.E.2d 201, 202 (N.C. 1980); *Lee v. Mut. Comty. Savings Bank*, 525 S.E.2d 854, 855 (N.C. App. 2000). Thus, we decline to affirm on this aspect of the district court's reasoning and instead leave the issue for the North Carolina courts to resolve in another case.

missing outright LCR's advice concerning the adjustment of the claim. LCR outlined various areas in which it believed Topsail's claim to be excessive and informed Topsail that it considered Topsail's estimate excessive by as much as ten percent, to no avail. Based upon its belief that Topsail's figures were excessive and Topsail's utter failure to respond to Elliston's concerns, Elliston presented Zurich with the option of disputing Topsail's claim. As part of the report outlining Zurich's options with respect to what LCR and Elliston considered an excessive claim, LCR advised Zurich that the decision as to whether to dispute the claim should be based upon "a review of previous actions including timeliness of adjuster's estimate, past verbal agreements, vested authority to settle the claim, the 3.7 million dollar benchmark estimate, the percentage complete[d] of repairs, holdback depreciation, verification of repairs, and the methodology used to arrive at the current dollar value of the claim." (J.A. at 241.)

As the district court noted, the outlined conduct demonstrates only that LCR and Elliston were fulfilling the duties that they were hired to fulfill in monitoring the claim process in a professional, fair manner. Nothing in the correspondence indicates that Elliston, through LCR, acted deceitfully or otherwise unfairly by recommending to Zurich that Topsail's claim was not valid.[10] Instead, the facts compel the conclusion that Elliston reasonably believed Topsail's claim to be excessive and recommended that Zurich dispute the submitted claim on that basis. Additionally, by setting forth factors for Zurich to weigh in deciding whether to dispute the claim, LCR reasonably indicated that the decision of whether to accept or reject Topsail's figures ultimately rested with Zurich and should be based upon factors within the knowledge and discretion of Zurich. Because LCR and Elliston acted professionally, fairly, and in a non-deceitful manner in advising Zurich throughout the claim adjustment process, their recommendation that Zurich dispute Topsail's claim does not provide a basis for Topsail's UDTPA cause of action.

---

[10]Elliston's misrepresentation as to the deductible is an insufficient basis for an UDTPA claim for the reasons given in Section II.A.

B.

Topsail next relies upon a letter sent by Elliston to Topsail on July 30, 1997, in which Elliston recommended that Zurich make an interim payment of less than the amount requested by Topsail. The July 30 letter states as follows:

> Attached is Tom Crim's request for an interim payment of $500,000. We believe this request is excessive considering we intend to put together a reasonable figure for the entire job within a couple weeks. I would think the less money they have in hand the more receptive they may be to promptly arrive at a final number less the supplements.

(J.A. at 1386.)

Topsail argues that the July 30 letter indicates an intent to deprive Topsail of a fair settlement by withholding funds. To the contrary, Elliston reasonably noted its belief that $500,000 was an excessive interim payment, in light of the fact that Topsail had already submitted its June claims summary at the time it requested this interim payment and the final claim settlement was expected within two weeks. Additionally, to the extent that this letter indicates that Elliston was attempting to negotiate a lower settlement, it was reasonable to do so, insofar as Elliston was not attempting to deprive Topsail of an amount that Topsail was rightfully due under the policy. Rather, as noted above, Elliston had reasonable bases to believe that Topsail was not entitled to the excessive claim it was seeking. Therefore, the July 30 letter does not provide support for an UDTPA claim.

C.

Finally, Topsail contends that Elliston misrepresented facts in an attempt to persuade Zurich to dispute Topsail's claim. On September 12, 1997, after the Zurich representative who had been primarily responsible for the Topsail claim retired, Elliston sent a letter to the replacement representative in which Elliston briefly summarized the background of the Topsail claim. In the letter, Elliston stated, "[Topsail] admittedly declared they were given the vested authority by Mr.

Ian Scott to act as the adjuster on the job. This perception is not correct." (J.A. at 1383.) Topsail argues that this is a clear misrepresentation, in light of previous letters in which Elliston had recognized Topsail's authority to adjust its own claim. On June 23, 1997, Elliston sent a letter to Zurich stating, "The second general issue is that [Topsail] informed [LCR] that you vested him full authority to adjust the claim. This in effect strips us of any authority to override [Topsail] and [the] instructions to the contractor." (J.A. at 1374.) On July 11, 1997, Elliston sent a letter to Zurich stating that LCR and Elliston, "agree that the full control of this claim rests with [Topsail] and the contractor." (J.A. at 1366.)

To the extent a discrepancy exists between the June, July, and September letters that renders the September letter misleading, the misleading statement is insufficient to ground an UDTPA claim against Elliston because there is no evidence that Topsail was damaged by this misleading statement. *See, e.g.*, *Burgess v. Busby*, 544 S.E.2d 4, 11 (N.C. App. 2001) (noting that, to establish a prima facie UDTPA claim, the plaintiff must show that the act or practice "proximately caused actual injury to them"). No evidence exists indicating that Zurich relied upon Elliston's statement as its basis for disputing Topsail's claim. In fact, when read in conjunction with the entire correspondence regarding the Topsail claim, it is simply implausible to contend that this one statement induced Zurich to dispute the claim. Accordingly, we affirm the district court's entry of summary judgment in favor of Elliston, as well as the district court's consequent dismissal of Elliston from the case.

IV.

Topsail next challenges the district court's entry of summary judgment in favor of Zurich as to Topsail's bad faith refusal to settle claim. To establish a claim for bad faith refusal to settle, Topsail must show: (1) "a refusal to pay after recognition of a valid claim; (2) bad faith; and (3) aggravating or outrageous conduct." *Lovell v. Nationwide Mut. Ins. Co.*, 424 S.E.2d 181, 184 (N.C. App. 1993). Because Topsail has failed to provide evidence to support any of these elements, we affirm the district court's entry of summary judgment in favor of Zurich.

Topsail argues that the claim for damages submitted to Zurich on June 17, 1997 represented an "undisputed portion" of its claim and that Zurich's refusal to pay constituted a refusal to pay after recognition of a valid claim. (Appellant's Br. at 15.) In support of this position, Topsail relies almost exclusively on the alleged authority Zurich vested in it to adjust the claim, contending that the vested authority establishes that the claim submitted to Zurich was "undisputed" and "valid" as a matter of law.

Topsail states that it had been vested with authority to "negotiate with the contractor and reconcile the remaining differences in the two estimates and submit the claim" for payment. (J.A. at 16.) Accepting these facts as true, Zurich authorized Topsail to adjust its own claim *but did not state that it would waive its right to approve the final submission*.[11] Thus, the fact that authority was vested in Topsail to adjust its own claim does not in any way demonstrate that the submitted claim was undisputed or otherwise presumptively valid. To the contrary, all of the evidence demonstrates that the submitted claim legitimately was in dispute.[12]

---

[11]Topsail notes that the insurance policy provides that "[t]he Company shall pay all adjusted claims within 30 days *after presentation and acceptance* of proof of loss at the office of the Company." (Appellant's Br. at 19-20) (emphasis added). Thus, the insurance policy itself provides that an adjusted claim is not binding on the company until the company accepts the submitted claim. Moreover, during trial, Topsail admitted knowing that Zurich retained the ultimate authority to approve the submitted claim. Accordingly, Topsail's assertion that its alleged authority to adjust the claim compels the conclusion that the submitted claim was valid is belied by the insurance policy and by Topsail's own admissions.

[12]As the district court noted, Zurich acted reasonably and in good faith by giving Topsail the opportunity to negotiate its final claim submission with Hale. By giving Topsail this opportunity, however, Zurich could not have intended to cede its ability to avoid payment on a grossly excessive or otherwise improper claim. Instead, Zurich assumed that Topsail would negotiate in good faith with the advice and input of Zurich's representatives, making the claim submission go along more smoothly. When Topsail refused to heed the advice and input of Zurich's representatives and instead submitted a claims summary with miscalculations and other excessive figures, Topsail cannot validly complain about Zurich's refusal to pay immediately the submitted amount.

Throughout the claim negotiation process, Zurich, through LCR, made Topsail aware that its use of the benchmark was in dispute and that LCR perceived its claim as excessive. In its written response to Topsail's claims summaries, Zurich clearly indicated that it disputed the validity of various aspects of Topsail's claim. As noted above with respect to Topsail's UDTPA causes of action, Zurich had valid reasons for questioning the validity of the claim. Because Zurich had legitimate reasons to question the validity of Topsail's submitted claim that were made known to Topsail from the first of Zurich's correspondence and during Topsail's negotiations with Hale, Topsail can point to no evidence that supports its conclusion that Zurich ever recognized its claim summaries as valid. As noted by the district court, Topsail "failed to forecast evidence tending to show that Zurich ever recognized a valid claim. Rather, plaintiff's evidence at trial was to the effect that Zurich, upon Elliston's advice, deemed plaintiff's claim figures to be excessive and therefore not valid." (J.A. at 1440.)[13]

Nor can Topsail point to evidence supporting the other two elements of a bad faith refusal to settle claim. Bad faith means "not based on honest disagreement or innocent mistake." *Dailey v. Integon Gen. Ins. Corp.*, 331 S.E.2d 148, 155 (N.C. App. 1985). Aggravated conduct is defined to include "fraud, malice, gross negligence, insult . . . willfully, or under circumstances of rudeness or oppression, or in a manner which evinces a reckless and wanton disregard of the plain-

---

[13]Topsail contends that Zurich's failure to respond to its June claims summary until September 19, 1997 constituted "a refusal to pay after recognition of a valid claim." (Appellant's Br. at 20.) This contention is erroneous for a number of reasons. First, as noted above, Zurich never recognized a valid claim. Additionally, Zurich continued to correspond with Topsail throughout the months of June through August, until Zurich completed its claim analysis in September. On July 24, 1997, Topsail's president indicated that Elliston had informed him that it was in the process of putting together final figures for the Topsail claim. On August 21, 1999, Elliston updated Topsail on the status of the claim, and informed Topsail that its final figures for the claims summary would be completed in a few weeks. Moreover, Zurich continued to authorize interim payments to Topsail while it was in the process of finalizing the claim. Thus, Topsail's intimation that Zurich failed to communicate with Topsail for three months, thereby indicating Zurich's refusal to pay after recognizing the validity of the claim, is contrary to the record.

tiff's rights." *Id.* at 154. As was established in *Olive v. Great American Ins. Co.*, 333 S.E.2d 41 (N.C. App. 1985), when an insurer denies a claim because of a legitimate, "honest disagreement" as to the validity of the claim, the insurer is entitled to judgment as a matter of law because the plaintiff cannot establish bad faith or any tortious conduct on the part of the insurer. *Id.* at 46 (holding that summary judgment is appropriate in favor of the insurer on a bad faith refusal to settle claim when coverage issue was reasonably in dispute). Here, Topsail's claim was reasonably in dispute. Thus, Topsail's allegations fail as a matter of law to establish bad faith or aggravating conduct. Accordingly, the district court did not err by granting summary judgment in favor of Zurich on Topsail's bad faith refusal to settle claim.

V.

Finally, Topsail challenges the district court's exclusion of evidence of Topsail's authority to adjust its own claim to prove its damages resulting from Zurich's breach of the insurance contract. The district court found that the evidence was inadmissible because it is irrelevant to the issue of damages. We review the district court's decision to exclude evidence for an abuse of discretion. *See United States v. Hassouneh*, 199 F.3d 175, 182 (4th Cir. 2000).

The insurance policy establishes that Topsail is entitled to coverage on the reasonable costs of repairs resulting from hurricane-related damage. Assuming Topsail's allegations about its authority are true, the authority vested in Topsail did not change the scope of the insurance policy's coverage. Thus, the authority was completely irrelevant to the jury's determination of the damages resulting from the breach of the insurance policy. Because Topsail's authority to adjust its claim is irrelevant to the amount for which Zurich was liable under the insurance policy, the district court did not abuse its discretion by excluding this evidence.[14]

---

[14]Moreover, the district court offered Topsail every opportunity to explain a legal theory under which the alleged authority vested in Topsail by Zurich would be relevant to the alleged breach of contract, but Topsail was unable to do so. For instance, the issue of authority could have been relevant to an estoppel or reliance claim, insofar as Topsail may

## VI.

Because Topsail is unable to establish the prima facie elements of its UDTPA claims and its bad faith refusal to settle claim, the district court did not err by entering summary judgment against Topsail. Moreover, the district court did not abuse its discretion by excluding evidence of Topsail's authority to adjust its own claim. Accordingly, the judgment of the district court is affirmed.

*AFFIRMED*

---

have entered into contracts with Hale relying upon the authority vested in them by Zurich to do so. As the district court noted, however, the only contracts that Topsail produced between Hale and Topsail were signed *before* the alleged vesting of authority; therefore, Topsail could not establish an estoppel claim even after extensive prodding by the district court.