**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-1642**

---

MICHAEL A. BAILEY; CHRISTIE B. BAILEY,

        Plaintiffs - Appellants,

     v.

CERTAIN INTERESTED UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. BWD652420,

        Defendant - Appellee.

---

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville.  James C. Dever III, District Judge.  (4:21-cv-00159-D)

---

Submitted:  April 1, 2024                    Decided:  May 31, 2024

---

Before THACKER, BENJAMIN, and BERNER, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**ON BRIEF:**  Wesley A. Collins, HARVELL & COLLINS, Morehead City, North Carolina, for Appellants.  Kevin M. O'Brien, Anna Pulliam Cathcart, Machaella Reisman, PHELPS DUNBAR, LLP, Raleigh, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Michael A. Bailey and Christie B. Bailey ("Appellants") allege that Certain Interested Underwriters at Lloyd's London Subscribing to Policy No. BWD652420 ("Appellee") violated the duty of good faith and fair dealing and North Carolina's deceptive trade practices law in connection with Appellants' homeowner's insurance policy. The district court dismissed these claims because Appellants failed to allege that Appellee committed the level of malfeasance required for such claims.

We agree with the district court's holding, and, therefore, we affirm.

I.

In August 2018, Appellants bought a beach house in Carteret County, North Carolina.[1] They insured the house through Appellee. In September 2018, the house was damaged by hurricane Florence. Appellee's insurance adjuster visited the house and appraised the hurricane damage as minor. Pursuant to the adjuster's recommendation, Appellants made repairs costing $170,000.

After a subsequent storm, Appellants noticed new water damage, and they hired an engineer to investigate. The engineer determined that the previous damage to the house from hurricane Florence was greater than Appellee's adjuster had surmised. Appellants notified Appellee of this determination, sent their engineer's report to Appellee, and asserted a claim for coverage. Based on the new assessment, Appellee made several

---

[1] The following facts are taken from Appellants' First Amended Complaint, except where otherwise noted.

2

supplemental payments to Appellants. Appellee's total payments to Appellants, including the supplemental payments, totaled $447,019.23. However, the parties continued to dispute the magnitude of damage to Appellants' house, with Appellants claiming damages of $2,123,945.17.

On April 27, 2021, the parties agreed to reassess the damage, and the case was submitted to a neutral appraisal panel. On November 10, 2021, the appraisal panel awarded Appellants $1,002,114, and Appellee undisputedly paid this sum to Appellants.

On September 8, 2021, while the re-appraisal was underway, but before the final award, Appellants sued Appellee in North Carolina state court. Appellee removed the case to federal court based on diversity jurisdiction on October 22, 2021. The case was stayed on November 1, 2021, pending the completion of the appraisal process, which came with the final award nine days later.

On July 12, 2022, Appellants moved to lift the stay. Appellants filed an Amended Complaint, which includes claims for breach of contract, bad faith, violations of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), and negligence.

Appellee moved to dismiss the Amended Complaint for failure to state a claim. The district court granted the motion to dismiss in its entirety with prejudice. The court dismissed Appellants' claim for breach of the implied covenant of good faith and fair dealing because Appellants failed to allege either bad faith or any aggravating circumstance. The court dismissed Appellants' claim pursuant to the UDTPA for similar reasons. The court also dismissed Appellants' other claims not at issue on appeal.

3

Appellants timely appealed. They appeal only the dismissal of their claims for breach of the implied covenant of good faith and fair dealing and the dismissal of their claims for Appellee's alleged violation of the UDTPA and N.C. Gen. Stat. § 58-63-15(11).

## II.

We review the district court's dismissal for failure to state a claim de novo. *Bhattacharya v. Murray*, 93 F.4th 675, 687 (4th Cir. 2024).

## III.

There are two issues in this appeal: (1) whether the district court properly dismissed Appellants' claim for breach of the implied covenant of good faith; and (2) whether the district court properly dismissed Appellants' claim for violation of the UDTPA. The claims both involve whether Appellee committed foul play in its initial assessment of damage and in declining to pay Appellants' demand once the damage proved worse than initially assessed. The district court rejected both claims based on Appellants' failure to allege foul play.

Appellants do not specifically argue against any of the district court's holdings regarding these claims. Instead, Appellants cite three other district court cases and argue that, because the allegations in those cases were sufficient to survive a motion to dismiss, the allegations here must be too. *See* Opening Br. at 7 ("The heart of Plaintiffs' argument is simple; prior cases, decided by Fourth Circuit District Courts call for the reversal of the Trial Court's order."). Appellants are incorrect.

4

A.

Implied Covenant of Good Faith

The district court held that Appellants' claim for breach of the implied covenant of good faith and fair dealing fails for two reasons: (1) Appellants fail to allege any act of bad faith because they do not plausibly allege the insurance adjuster intentionally misrepresented the extent of damage to Appellants' house; and (2) Appellants fail to plausibly allege any "aggravating circumstance," a required element of this common law claim.

North Carolina recognizes a claim for breach of the implied covenant of good faith and fair dealing. *Heron Bay Acquisition, LLC v. United Metal Fishing, Inc.*, 781 S.E.2d 889, 894 (N.C. Ct. App. 2016). In the insurance context, this claim "is separate from a claim for breach of contract." *Nadendla v. WakeMed*, 24 F.4th 299, 308 (4th Cir. 2022) (applying North Carolina law). A claim for breach of the covenant of good faith and fair dealing in an insurance contract includes three elements: (1) a refusal to pay after recognition of a valid claim; (2) bad faith; and (3) aggravating or outrageous conduct. *Lovell v. Nationwide Mut. Ins. Co.*, 424 S.E.2d 181, 184 (N.C. Ct. App. 1993).

1.

Bad Faith

In this context, bad faith would mean that Appellee's refusal to pay or settle Appellants' claim on any reasonable basis was not based on "a legitimate, 'honest disagreement' as to the validity of the claim." *Topsail Reef Homeowners Ass'n v. Zurich*

5

*Specialties London, Ltd.*, 11 F. App'x 225, 239 (4th Cir. 2001) (citing *Olive v. Great Am. Ins. Co.*, 333 S.E.2d 41, 46 (N.C. Ct. App. 1985)).

The district court concluded that Appellee's adjuster did not act in bad faith. Appellants' Amended Complaint alleges that the insurance adjuster failed to assess the beach house closely enough to appreciate the size of the damage. Because this was an oversight, not malfeasance, the district court held the adjuster's mistake was not in bad faith. To be sure, the Amended Complaint also alleges that the "adjuster purposely undervalued the loss, as a more invasive adjustment would have revealed the scope of damage." J.A. 303.[2] But the district court held that this allegation was conclusory and was contradicted by the well-pled factual allegation that the adjuster conducted only a visual inspection, and thus failed to appreciate the extent of the loss. Thus, the district court held that the allegation could not support a plausible claim of bad faith.

On appeal, Appellants assert several misdeeds that could arguably amount to bad faith: (1) the field adjuster conducted only a visual inspection of the property and did not perform a more invasive inspection; (2) Appellee allegedly disregarded a statement from the North Carolina Department of Insurance that beach properties required more invasive inspections; and (3) though Appellants submitted an engineer's opinion regarding the extent of damage to Appellee, Appellee ignored or rejected the expert opinion and only examined its own expert opinion.

---

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

We agree with the district court. As to the assessment of the field adjuster, the Amended Complaint includes no plausible, nonconclusory allegations that the adjuster knew, yet concealed, the true extent of the damages. The Amended Complaint alleges that the adjuster conducted a visual inspection and concluded that the extent of the damage could be determined based on that inspection. *See* J.A. 303 ¶ 71 ("[T]he initial adjuster . . . based his scope of the initial adjustment on visuals alone, which is a wholly inadequate adjustment."). The adjuster may have been wrong about the extent of damage, or the need to conduct further inspection, but "honest disagreement or innocent mistake" does not amount to bad faith. *Lovell*, 424 S.E.2d at 185; *see also Michael Borovsky Goldsmith LLC v. Jewelers Mut. Ins. Co.*, 359 F. Supp. 3d 306, 314 (E.D.N.C. 2019) ("Legitimate and honest disagreement over the scope of coverage under an insurance contract does not amount to bad faith.") (applying North Carolina law); *Wynnewood Lumber Co. v. Travelers' Ins. Co.*, 91 S.E. 946, 947 (N.C. 1917) ("[W]here hindsight turns out to be better than foresight . . . a mistake [of judgment], honestly made, does not subject the person to legal liability.").

Appellee allegedly "ignoring" the statement of the North Carolina Department of Insurance also does not amount to cognizable bad faith. Appellants allege that "at the time the adjustment occurred, North Carolina's Department of Insurance had issued a statement [about beach properties] to insurance carriers, including [Appellee], notifying them of the need to do more invasive inspections based upon the use of moisture vapor barriers on the coast." J.A. 296. Setting aside that Appellants fail to allege specifically what this statement said or why we can assume Appellee actually received it, it does not demonstrate that the

7

adjuster acted in bad faith.  At most, the adjuster should have known that a more fulsome inspection was required, but that does not rise to the level of bad faith.

Nor have Appellants alleged bad faith concerning their engineers' damage assessment.  Appellants allege that Appellee "solely rel[ied] on information provided by their engineer and [did] not equally consider[] the data provided by [Appellants]."  J.A. 306.  But Appellants cite nothing indicating that Appellee's decision not to equally consider the report of Appellants' engineer would amount to bad faith.  There is no dispute that Appellee not only agreed to re-appraisal following the report of Appellants' engineer but also promptly paid the full final award amount.

Notably, Appellants' demand following their engineer's inspection of the property and assessment of damages was $2,123,945.17, which was much higher than the final award amount of $1,002,114.  In fact, the sum demanded by Appellants was twice as much as the final award and twice as far from the final award as the sum of assessed damages Appellee had paid to that point, $447,019.23.  Appellee rightly argues that this underscores the reasonableness of its disagreement with Appellants regarding the scope of damage. Appellee can hardly be said to have acted in bad faith by refusing to pay Appellants' demand when the appraisal panel awarded Appellants less than half of what they demanded.  Further, Appellee's willingness to provide supplemental payments above the initial assessed damage shows its good faith in the execution of the insurance contract. Even accounting for Appellants' allegations regarding its engineer's assessment, this case remains merely a reasonable disagreement regarding the scope of damage.

8

Thus, we agree with the district court that Appellants failed to plausibly allege that Appellee demonstrated bad faith.

2.

Aggravating Circumstances

In this context, aggravating circumstances (or "aggravated conduct") "is defined to include fraud, malice, gross negligence, insult . . . willfully, or under circumstances of rudeness or oppression, or in a manner which evinces a reckless and wanton disregard of the plaintiff's rights." *Topsail Reef Homeowners Ass'n*, 11 F. App'x at 239 (citing *Dailey v. Integon Gen. Ins. Corp.*, 331 S.E.2d 148, 154 (N.C. Ct. App. 1985)). The district court held that Appellants failed to allege any such circumstance and noted that Appellee made several payments to Appellants throughout the course of the investigation, which reflected *good* faith.

For the reasons discussed above, we agree with the district court that there was no aggravating circumstance that would satisfy the third element of a claim for breach of the implied covenant of good faith. There is simply no plausible and nonconclusory allegation of fraud, malice, or willful or wanton conduct in Appellee's behavior in this case. The adjuster failed to appreciate the scope of the damage, but when new facts came to light, Appellee readily agreed to re-appraise the property and ultimately paid the amount dictated by the appraisal panel. And up to that point, Appellee had been making "pre-appraisal payment(s)" on the policy. J.A. 299 ¶ 43; *see also* Response Br. at 12 ("Before the appraisal, [Appellee] made payments totaling $447,019.23.").

9

Therefore, we agree with the district court that Appellants failed to state a claim for breach of the common law duty of good faith, and we affirm the district court's dismissal of this claim.

B.

Violations of the UDTPA

The district court determined that Appellants failed to state a UDTPA claim. A claim pursuant to the UDTPA includes three elements: "(1) an unfair or deceptive act or practice (2) in or affecting commerce (3) which proximately caused actual injury to the plaintiff." *Kelly v. Georgia-Pacific LLC*, 671 F. Supp. 2d 785, 798 (E.D.N.C. 2009) (citing N.C. Gen. Stat. § 75–1.1; *Dalton v. Camp*, 548 S.E.2d 704, 711 (N.C. 2001); *Walker v. Fleetwood Homes of N.C., Inc.*, 653 S.E.2d 393, 399 (N.C. 2007); *RD & J Props. v. Lauralea–Dilton Enters., LLC*, 600 S.E.2d 492, 500 (N.C. Ct. App. 2004)). "The conduct must be immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Id.* at 798–99; *Norman Owen Trucking, Inc. v. Morkoski*, 506 S.E.2d 267, 273 (N.C. Ct. App. 1998) ("Simple breach of contract or failure to pay a debt do not qualify as unfair or deceptive acts, but rather must be characterized by some type of egregious or aggravating circumstances before the statute applies."). "Whether an act or practice is unfair or deceptive under the UDTPA is a question of law for the court." *Kelly*, 671 F. Supp. 2d at 799.

The district court noted that Appellants alleged six violations of the UDTPA, which are quoted verbatim from the statute:

10

a.  Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

b.  . . .

c.  Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

d.  Refusing to pay claims without conducting a reasonable investigation based upon all available information;

e.  . . .

f.  Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

g.  Compelling [the] insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured; [and]

h.  Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled.

J.A. 688 (citing N.C. Gen. Stat. § 58-63-15(11)).

The district court rejected each of Appellants' contentions. First, the court rejected the allegation that Appellee misrepresented pertinent facts or insurance policy provisions relating to coverages at issue. As discussed above, the court held Appellants had "only nakedly assert[ed]" that the adjuster purposely undervalued the loss. J.A. 689. Appellants did not "plausibly allege that the adjuster or [Appellee] had knowledge of the actual extent of the damage and affirmatively misrepresented these facts." *Id.*

Second, the district court rejected the allegation that Appellee failed to adopt and implement reasonable standards for the prompt investigation of claims arising under

11

insurance policies. The court held that Appellants had failed to include any plausible allegation that the adjuster's visual inspection of damage was unreasonable under the circumstances. Further, the court concluded that the Amended Complaint "does not make any allegations as to [Appellee's] internal standards for investigation of claims, let alone a plausible allegation that [Appellee's standards were unreasonable]." J.A. 689.

Third, the district court rejected the allegation that Appellee refused to pay claims without conducting a reasonable investigation based upon all available information. In support of its holding, the court noted both that Appellee's adjuster conducted a visual inspection of the damaged property and that Appellee hired its own engineers to inspect the property. And the court held, "Moreover, the amended complaint only alleges that [Appellee's] experts came to inaccurate conclusions, not that the experts engaged in fraud or deception on behalf of the defendants." J.A. 690.

The district court then rejected Appellants' fourth and fifth allegations. Those allegations were that Appellee was not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear and that Appellee was compelling Appellants to litigate to recover amounts due under an insurance policy by offering substantially less than the amount recovered. The court emphasized that the extent of liability was not reasonably clear before the final re-appraisal award, which was closer to Appellee's payment than to Appellant's demand. The court noted that "a mere disagreement between a policy holder and an insurance company does not transform a run of the mill insurance dispute into [a UDTPA claim]." J.A. 691 (citations omitted).

12

Sixth and finally, the district court rejected Appellants' allegation that Appellee was attempting to settle a claim for less than the amount to which a reasonable person would have believed they were entitled. In this regard, the court highlighted that Appellee paid the full amount of the final appraisal award after going through a neutral dispute resolution process.

We agree with the district court that Appellants have failed to state a claim for any violation of the UDTPA. Appellants have alleged no unfair or deceptive business practice. As with the common law covenant of good faith claim, here, Appellants are attempting to squeeze allegations that Appellee was mistaken about and reasonably disagreed regarding the scope of coverage into a claim that Appellee committed a deceptive trade practice. The allegations of the Amended Complaint undermine this effort. The Amended Complaint makes clear that Appellee's appraiser simply conducted an inadequate visual inspection and was thus unaware of the true scope of the property damage. Further, Appellee paid Appellants under the policy, agreed to submit the dispute regarding the scope of damage to an appraisal panel, and ultimately paid the full amount of the damages as determined by that panel. As we have emphasized, the final award was significantly closer to the amount Appellee had already paid than it was to the amount Appellants demanded -- an amount Appellants now allege Appellee unreasonably refused to pay.

Accordingly, we agree with the district court that Appellants have failed to state a claim pursuant to the UDTPA.

13

C.

Inapposite District Court Cases

Appellants cite three district court cases that they describe as the "heart" of their argument: *Browder v. State Farm Fire & Cas. Co.*, No. 1:20-cv-00026, 2020 WL 7696092, at *1 (W.D.N.C. Dec. 28, 2020); *Hunter v. State Farm Fire & Cas. Co.*, No. 5:17-cv-00224, 2018 WL 3620493, at *1 (W.D.N.C. July 30, 2018); and *Gandecha v. Metro. Prop. & Cas. Ins. Co.*, No. 5:13-cv-688, 2014 WL 4243797, at *1 (E.D.N.C. Aug. 26, 2014). Appellants rely on these cases because, in each of them, the district courts allowed claims based upon the implied covenant of good faith and the UDTPA to survive motions to dismiss due to the presence of some malfeasance on the part of a defendant-insurer. Appellants hope to analogize the allegations of their Amended Complaint to the allegations at issue in *Browder*, *Hunter*, and *Gandecha*. Each case is decisively distinguishable.

In *Browder*, the court denied a motion to dismiss where State Farm refused to pay under a homeowner's insurance contract following a tropical storm. *See generally*, 2020 WL 7696092. However, the court did so because of circumstances not present here: State Farm "requested Plaintiffs to hire experts to assess the property damage," but then "rejected Plaintiff's two expert assessments of damage . . . in violation of [its] own best practices." *Id.* at *3. Thus, *Browder* is distinguishable because State Farm directed the plaintiffs to seek an assessment and then inexplicably ignored the results of the very assessments it requested. The plaintiffs in *Browder* also alleged that State Farm refused to conduct a reasonable investigation of the cause of the property damage, unlike Appellee here, which agreed to an independent appraisal.

14

In *Hunter*, State Farm allegedly denied five successive claims for coverage on the same property which had sustained serious damage resulting in a risk of collapse. *See generally* 2018 WL 3620493. But there, the plaintiff alleged that State Farm *knew* her home had sustained a covered loss and still denied coverage. *Id.* at *3. The *Hunter* plaintiff alleged that, when State Farm's own inspector was examining her house, the inspector made statements suggesting that, if she opened the basement door, the wall might collapse. *Id.* This suggested both that coverage applied ("collapses" were covered) *and* that State Farm (or its agent) knew about the covered damage but omitted that damage from the written report. *Id.* at *4. This allegation of deliberate omission or concealment of the covered loss distinguishes *Hunter* from this case, where Appellants allege in a conclusory and contradictory fashion that Appellee failed to conduct a sufficiently thorough inspection, yet also knew of the hidden damage that such inspection was necessary to reveal.

Finally, *Gandecha* is also at odds with the case at hand. In *Gandecha*, the plaintiffs alleged that their insurer, Metropolitan, knew about damage to their house, and knew that damage was a covered loss, but nevertheless refused to pay on the claim:

> However, the allegations in the complaint—which is what this court is confined to considering on a motion to dismiss— include that EDTC found multiple instances of hail damage to the Property, and that Metropolitan refused to replace the Property's roof, even though the Storm Damage justified replacement. Plaintiffs also allege that Metropolitan relied on false or misleading information to deny the Claim. Plaintiffs further allege that there is "no basis whatsoever on which a reasonable insurance company would have relied to deny the full payment." These are sufficient factual details to support Plaintiffs' allegations that Metropolitan engaged in an unfair

15

> and deceptive trade practice, even without considering their allegations that Metropolitan violated another practice enumerated in N.C. Gen. Stat. § 58–63–15(11).

2014 WL 4243797, at *4 (internal record citations omitted). Thus, *Gandecha* is also distinguishable because the insurer there refused to compensate the insured for a loss the insurer knew was covered. Here, by contrast, Appellee conducted a reasonable, if inadequate, inspection of the loss, paid Appellants pursuant to the insurance policy, and when the loss proved greater than initially appreciated, agreed to appraisal by a neutral panel and paid the full award of that panel.

Aside from the fact that none of the cases relied upon by Appellants are binding on this court, none of them undermine the district court's holding.

## IV.

We affirm the district court's dismissal of Appellants' claims for breach of the implied duty of good faith and deceptive business practices in violation of the UDTPA.

*AFFIRMED*

16